**No. 25-2539**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

---

JOHN WILLIAMS,

Plaintiff-Appellant,

v.

BRITTANY HUNER, et al.,

Defendants-Appellees.

---

On Appeal from the U.S. District Court
for the Eastern District of Pennsylvania,
No. 2:25-cv-00928, Hon. Mitchell S. Goldberg

---

# APPELLANT'S BRIEF

---

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW, Front 1
#33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant*

On the brief: Reilly Johnson
Student, Harvard Law School

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

JURISDICTIONAL STATEMENT ..... 1

STATEMENT OF THE ISSUES ..... 1

STATEMENT OF RELATED CASES ..... 1

STATEMENT OF THE CASE ..... 2

SUMMARY OF ARGUMENT ..... 10

STANDARD OF REVIEW ..... 11

ARGUMENT ..... 12

I. Williams Stated a Claim Under the ADA ..... 12

a) Williams named a public entity as a defendant. ..... 13

b) Williams alleged disability discrimination by pleading a failure to accommodate. ..... 14

c) Williams plausibly alleged a failure to reasonably accommodate his disability. ..... 15

d) Williams sought rigid braces as accommodations, not medical treatment. ..... 17

e) Williams alleged deliberate indifference. ..... 18

f) There are no alternative grounds for affirmance. ..... 21

II. Williams Stated a Claim Under the Eighth Amendment ..... 23

a) Grossly inadequate medical care, not only a total denial of care, violates the Eighth Amendment. ..... 23

b) The district court did not even analyze Williams's Eighth Amendment claim arising from the denial of pain medication. ..... 25

c) There is no alternative basis to affirm. ..... 26

III. The District Court's Errors Extended to Procedure as well as Substance ..... 32

a) The district court should have given Williams leave to amend his ADA and Eighth Amendment claims. ....................32
b) The district court erred in dismissing Williams's claims for injunctive relief. ....................33
CONCLUSION ....................34
CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Choate*, 469 U.S. 287, 295 (1985) ........................................14, 15, 16

*Allah v. Thomas*, 679 F. App'x 216 (3d Cir. 2017)................................................29

*Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 109 (3d Cir. 2018) ..................................................................................................14, 15, 16, 17

*Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (per curiam)..............30, 31

*Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931)......................................34

*Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (per curiam) ..............30, 31

*Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 94 (3d Cir. 2011) ..........................................................................................................12

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).......................................11

*Estelle v. Gamble*, 429 U.S. 97, 103 (1976)......................................................23, 27

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ......................................................28

*Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam)....30, 31

*Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 170 (2017)..........................................12

*Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019)...........................22

*Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) ..........................................20

*Hairston v. Dir. Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014)...........29

*Helen L. v. DiDario*, 46 F.3d 325, 330 (3d Cir. 1995), *as amended* (Feb. 2, 1995) ..........................................................................................................14

*Hershman v. Muhlenberg College*, 17 F. Supp. 3d 454, 458 (E.D. Pa. 2014) ........16

*Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1104 (3d Cir. 1996)................16

*In re Sunrise Securities Litigation*, 793 F. Supp. 1306, 1327 (E.D. Pa. 1992) .......33

*McDaniel v. Syed*, 115 F.4th 805, 823 (7th Cir. 2024) ..........................................22

*Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 120 (3d Cir. 1998)........15

*Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) ..........................................................................................................24, 25, 27

*Montanez v. Price*, 154 F.4th 127, 150 (3d Cir. 2025)...................................*passim*

*Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).....................................................11

*Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) ............28

*Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).......................................14

*Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d. Cir. 2017) .................................24, 25

*Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) .......................29

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)......................................12, 15

*Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 269 (D.D.C. 2015).............16

*Robinson v. Moreland*, 655 F.2d 887, 889–90 (8th Cir. 1981) ..............................25

*Roman v. Jeffes*, 904 F.2d 192, 196 n.8 (3d Cir. 1990)..........................................32

*Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999) ..............................................24, 26

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) ..........................................................................................................19

*Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (per curiam)........30, 31

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)............................2, 11

*United States v. California Mobile Home Park Management Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994) .......... 16

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982) .......... 34

**STATUTES**

42 U.S.C. § 12102 .......... 22

42 U.S.C. § 12132 .......... 18

**RULES**

Fed. R. Civ. P. 15(a) .......... 33

Fed. R. Civ. P. 54(c) .......... 33

**OTHER AUTHORITIES**

Third Circuit Model Civil Jury Instructions § 9.1.3 .......... 16

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant John Williams appeals from an order of dismissal entered July 22, 2025, by the U.S. District Court for the Eastern District of Pennsylvania. App. 4. The district court had subject-matter jurisdiction over his Americans with Disabilities Act (ADA), Eighth Amendment, First Amendment, and Fourteenth Amendment claims under 28 U.S.C. § 1331. The district court had supplemental jurisdiction over his negligence and malpractice claims under 28 U.S.C. § 1367. In accordance with Federal Rule of Appellate Procedure 4(a), a timely notice of appeal was filed on August 4, 2025. App. 1. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I. Whether the district court erred in dismissing Williams's disability law claims.

II. Whether the district court erred in dismissing Williams's Eighth Amendment claims.

III. Whether the district court erred in not granting Williams leave to amend his complaint.

## STATEMENT OF RELATED CASES

To counsel's knowledge, this case has not been before this Court previously. Counsel is not aware of any cases or proceedings that are in any way related,

completed, pending, or about to be presented before this court or any other court or agency, state or federal.

## STATEMENT OF THE CASE[1]

John Williams entered the custody of the Pennsylvania Department of Corrections (DOC) in 2019 with serious neck, back, hand, and wrist conditions. App. 42–43. These conditions cause him severe pain and prevent him from performing basic functions of daily life, and he sought both medical treatment and disability accommodations to address his pain and incapacitation. *Id.*

In 2017, Dr. Elena Sumas diagnosed Williams with several serious medical conditions. His C-4, C-5, and C-6 vertebrae are damaged, and he has a spinal cord nerve impingement. App. 42. He also has chronic, bilateral Carpal Tunnel Syndrome and arthritis in his hands, fingers, and wrists. *Id.* These conditions prevent Williams from lying flat or reclining comfortably and thus from sleeping restfully. *Id.* They also prevent him from performing basic functions like writing, gripping objects securely, lifting objects over two or three pounds, opening doors, handwashing clothing, managing his own hygiene when toileting, using hand or power tools, and other activities that require the use of his hands, arms, shoulder, neck, and head. App. 42–43. Dr. Sumas prescribed him adjustable, rigid, composite-plastic wrist

[1] This Court must accept all allegations as true and make all inferences in Williams's favor. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

splints for each wrist and an adjustable, rigid, composite-plastic neck brace. App. 43. These medical devices immobilize and support Williams's neck and wrists and reduce the pressure and thus the pain in his neck, back, wrists, and hands. *Id.* He was directed to wear them as much as possible. *Id.* Dr. Sumas also prescribed Williams Vicodin for his severe pain and Valium to help him sleep despite the pain. *Id.*

Williams entered DOC custody on July 22, 2019. App. 42. At his intake medical screening, he told DOC medical providers about his diagnoses and their required treatment. App. 42–43. DOC medical staff told Williams that he would not be provided with a neck brace, wrist splints, or prescription pain medications. App. 43.

For the next four years, Williams's pain steadily increased, as did the physical incapacitation his conditions caused. App. 43. Several times, he fell out of his top bunk, risking greater injury to his already fragile neck, wrists, and hands. *Id.* Between October 17, 2019, and June 20, 2023, Williams repeatedly requested a neck brace and wrist splints like those Dr. Sumas prescribed, as well as medication to relieve his debilitating pain. App. 43–44. Each time, DOC medical staff refused to provide the medical devices or adequate pain medication, instead offering him over-the-counter medications like ibuprofen and naproxen. App. 44. These pills did not manage Williams's incapacitating pain. *Id.*

On July 30, 2023, Williams filed a disability accommodations request with Correctional Health Care Administrator Brittany Huner. App. 44. He requested a neck brace and wrist splints like those provided by Dr. Sumas as well as pain medication more effective than ibuprofen or naproxen. *Id.* Huner and two unidentified health care providers, Jane Doe 1 and Jane Doe 2, interviewed Williams several times about his request. *Id.* He described in detail his conditions and diagnoses as explained to him by Dr. Sumas, the daily extreme pain they cause him, and the type of rigid, composite-plastic brace and splints that Dr. Sumas had prescribed. *Id.* He also explained that ibuprofen or naproxen were "completely ineffective" for relieving his debilitating pain. *Id.* Huner and Jane Does 1 and 2 told Williams that they had obtained his medical records from Dr. Sumas for review. *Id.* They refused to prescribe Williams more effective pain medication. App. 44–45.

Months later, on November 20, 2023, Huner told Williams that his disability accommodations request had been granted, and she provided him with a cervical collar and soft wrist braces. App. 45. But, as Williams immediately pointed out to Huner, these items were useless in addressing his conditions. *Id.* The soft, foam cervical collar, like the kind used to transport patients during emergency care, could not immobilize and support Williams's neck and head. *Id.* The rigid supportive inserts had been removed from the soft, fabric-and-Velcro wrist braces, leaving them

similarly unable to immobilize Williams's wrists and thus to reduce the pressure causing his incapacitation and pain. *Id.*

Williams told Huner that the collar and wrist braces lacked therapeutic value and were in effect worthless to treat his conditions. App. 45. She replied that the rigid wrist brace inserts and rigid neck brace were not allowed for security reasons. *Id.*

Williams grieved the denial of the rigid neck brace and wrist splints. On November 25, 2023, Williams filed described that neither the soft collar nor the braces "provide any therapeutic value for the particular medical conditions and disabilities that I suffer from." App. 67. The grievance pointed out that other incarcerated people had been issued medical devices with rigid plastic or metal components and that the failure to provide rigid supportive medical devices would "circumven[t] the . . . requirements of the ADA" and constitute "blatant indifference . . . to the pain and additional injury that I will inevitably suffer as a result of these inadequate medical devices." App. 67–68. In a response dated December 22, 2023, Orlando acknowledged Williams's claims of "blatant indifference" and an ADA violation but stated that "metal and hard plastic concealed in a medical device is not permissible." App. 69. The response claimed that "the wrist splints are still able to provide appropriate support in conjunction with your ADA accommodation" and the "neck brace approved via the ADA process was not specific for a 'rigid collar.'" *Id.*

The grievance response form was signed by Deputy Superintendent for Centralized Services Charles Hensley and approved by Facility Grievance Coordinator Gina Orlando. *Id.*

Williams appealed the denial on January 5, 2024. App. 70. The appeal recounted how Williams had requested rigid wrist splints and a neck brace repeatedly in the five years he had been in DOC custody, how he had described his conditions and their prescribed treatment in his ADA accommodations request process, and how these events had put DOC staff on notice of the fact that soft braces and a cervical collar would fail to immobilize his neck and wrists, leaving his "condition and the pain these conditions cause [him to] only continue to worsen." *Id.* Williams warned that, if he did not get appropriate treatment, "[i]t is even likely that my conditions will become so severe that surgery will not be able to correct them and I will be permanently crippled." *Id.* Facility Manager Joseph Terra denied the appeal on January 24, 2024. App. 71. Terra acknowledged that Williams sought these devices to accommodate his disability and Williams's claim that neither "provide any therapeutic value," but found that the grievance denial was appropriate as "metal and hard plastic concealed in medical devices are not permissible" and the collar and soft braces "are still able to provide appropriate support and are in conjunction with your approved ADA accommodation." *Id.*

On February 8, 2024, Williams submitted his appeal to final review. App. 72. He once again pointed out that he had seen the DOC issue medical devices containing rigid plastic and metal components to other prisoners, including wheelchairs, crutches, canes, leg braces, walking boots, and metal-framed eyeglasses. *Id.* He also pointed out that the DOC staff responsible for denying his grievance and appeal are not medical providers and thus that their conclusion that the collar and soft braces provide appropriate support are not supported by medical training. *Id.* On March 29, 2024, Chief Grievance Officer Dorina Varner and Assistant Chief Grievance Officer Keri Moore notified Williams that the Office would seek input from the DOC Bureau of Health Care Services (BHCS). App. 73. Finally, on June 24, 2024, Varner and Moore upheld the grievance response. App. 74. The decision form explained that BHCS, designated in the complaint as Doe 3, reviewed Williams's medical records and "determined that the medical care provided was reasonable and appropriate." *Id.*

Over the seven years that Williams has sought treatment for his conditions, his pain and incapacitation have worsened. App. 43, 51–52. He cannot sleep for longer than four hours per night, and he wakes from sleep several times a night crying out or whimpering in pain. App. 51. When he moves his head or neck in particular ways, he experiences shooting, fiery pain in his head, shoulders, and arms. App. 51–52. Sometimes the pain is so intense that his vision dims, and he feels as

though he is falling unconscious. App. 52. His range of motion in his head is severely limited, and he sometimes cannot look up, down, or to either side. *Id.* His hands and wrists have become so limited in movement that he struggles and sometimes cannot perform daily tasks like writing, opening doors, or gripping and lifting small objects. *Id.* The pain in his hands and fingers has become so debilitating and constant that he must immerse his hands in hot water for up to twenty minutes each morning in order to be able to brush his teeth, button his clothing, use utensils to eat, hold a cup, or hold a book. *Id.* In the past two years he has begun to occasionally—and with increasing frequency—lose feeling in his hands and feet. *Id.* Williams fears that, without adequate treatment, his conditions will exceed what is reversible, and his disability will become permanent. *Id.* Neither Huner, nor Jane Does 1 and 2, nor any other DOC staff ever medically examined Williams to assess the extent of his injuries or the pain he is experiencing. App. 50.

On February 20, 2025, Williams filed this action *pro se* in the United States District Court for the Eastern District of Pennsylvania, arguing that the DOC had violated the Americans with Disabilities Act and that prison officials had violated the Eighth and Fourteenth Amendments. App. 53–54. He also brought state law negligence and malpractice claims. App. 54.

On July 22, 2025, the district court dismissed Williams's ADA and Eighth Amendment claims without leave to amend. App. 5. The district court held that

Williams's ADA claims must be dismissed because he named individual defendants rather than a public entity, because he failed to allege that the discrimination he experienced was because of his disability, and because Defendants' refusal to provide rigid neck and wrist braces constituted a disagreement over medical treatment, which cannot provide the basis for an ADA claim. App. 23–24. The district court also held Williams had not demonstrated the intentional discrimination required for monetary damages because he had neither identified a policy that resulted in a failure to respond to situations like his nor pled a failure to respond to a risk. App. 24–25. The district court held that Williams had also failed to plead a violation of the Eighth Amendment because he alleged inadequate medical care, not a denial of care, and therefore Defendants were not deliberately indifferent to his serious medical needs. App. 18. Further, the district court held that the "expressed concern for institutional security" meant that Williams could not establish deliberate indifference for the refusal to provide him rigid braces. *Id.* Finally, the district court dismissed the claims against Defendants Orlando, Hensley, Terra, Moore, Varner, and Doe 3 because Williams had not alleged their personal involvement in decisionmaking about his medical care or accommodations, and because they could not be liable as supervisors for conduct that was not itself unlawful. App. 19–21.

The district court concluded that these deficiencies in Williams's ADA and Eighth Amendment claims rendered amendment futile. App. 18, 25. The district

court also dismissed his Fourteenth Amendment and state law claims. App. 12 n.2, 26. On August 4, 2025, Williams timely filed a notice of appeal. App. 1.

## SUMMARY OF ARGUMENT

This Court should reverse the district court's order dismissing Williams's complaint without leave to amend.

The district court erred in dismissing Williams's ADA claims. Williams properly named a public entity defendant, and the district court erred in holding that Williams had not pled discrimination on the basis of his disability: Williams alleged that he was denied meaningful access to prison services and programs because of his disability, in violation of the ADA's mandate of reasonable accommodation. Williams seeks rigid wrist and neck braces not as medical treatment but as the necessary accommodations that will allow him to sleep, eat, enjoy recreation, and otherwise access prison services on a similar basis to that of able-bodied prisoners. He has stated a claim for an ADA violation, and he has plausibly pled the public entity's deliberate indifference based on employees' subjective awareness of his need for accommodation and their refusal to provide the necessary accommodations.

The district court also erred in dismissing Williams's Eighth Amendment claims. Williams alleged grossly inadequate treatment of his debilitating pain; he does not need to allege a total denial of medical treatment to state a claim for deliberate indifference. Though the district court entirely failed to analyze it,

Williams's claim that Defendants refused to treat his pain by depriving him of previously prescribed pain medication states a claim under the Eighth Amendment. He alleges each Defendant's notice of and failure to act to address his ongoing debilitating pain. The district court erred in holding that his claims arose from a disagreement about medical treatment: there is no basis in Williams's complaint that any Defendant acted out of medical judgment.

The district court further erred in denying Williams leave to amend. Williams plausibly pleads ADA and Eighth Amendment violations, but to the extent that his complaint was unclear or lacked particular factual support, Williams's specific factual allegations make clear that amendment would not be futile.

## STANDARD OF REVIEW

This Court reviews a district court's screening-stage dismissal *de novo*. *Webb v. U.S. Dep't of Just.*, 117 F.4th 560, 567 (3d Cir. 2024). When reviewing a district court's pre-service screening order, a court "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Tourscher v. McCullough,* 184 F.3d 236, 240 (3d Cir. 1999) (quoting *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)). Because Williams's complaint was filed *pro se*, it must be construed "liberally" and held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

# ARGUMENT

The district court erred in dismissing Williams's ADA and Eighth Amendment claims. Despite its obligation to accept Williams's well-pled allegations and liberally construe his pleadings, the district court credited Defendants' purported justifications as both genuine and valid. Applying the appropriate standard, Williams sufficiently pled ADA and Eighth Amendment violations against each Defendant.

## I. Williams Stated a Claim Under the ADA

The Americans with Disabilities Act "aim[s] to root out disability-based discrimination, enabling each person . . . to participate equally to all others." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 170 (2017). "As 'a remedial statute, meant to bring an end to discrimination against individuals with disabilities in all aspects of American life,' the ADA 'must be construed with all the liberality necessary to achieve [its] purpose[].'" *Montanez v. Price*, 154 F.4th 127, 150 (3d Cir. 2025) (quoting *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 94 (3d Cir. 2011)). To achieve this "sweeping purpose," *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001), the ADA "impose[s] an affirmative obligation to make 'reasonable accommodations' for persons with disabilities." *Montanez*, 154 F.4th at 144. These affirmative protections for people with disabilities "do not stop at the prison gates." *Id.* at 137.

Williams plausibly pled a violation of the Americans with Disabilities Act. The district court erred in suggesting that Williams failed to name an appropriate defendant and in holding that he had not pled discrimination or a failure to accommodate. Williams plausibly pled both a violation of the ADA and deliberate indifference requisite to merit monetary damages. There are no alternate grounds for affirmance.

**a) Williams named a public entity as a defendant.**

The district court erred to the extent that it suggested Williams had failed to name the appropriate defendant for an ADA action. App. 23–24. "Title II of the ADA prohibits a 'public entity' from discriminating against disabled people," but claims against individuals in their official capacities under Title II "are simply treated as if they are against the public entity . . . that employs the individual." *Montanez*, 154 F.4th at 144, 145 n.6. The district court dismissed Williams's "individual capacity ADA claims against the Defendants . . . because they are not "public entities" within the meaning of the ADA," App. 23, but without noting that Williams sued each Defendant in their individual and official capacities, App. 32–33 (checking "official capacity" for each defendant listed); App. 34 ("The above-named Defendants are being sued in their individual and official capacities."). By suing Defendants who work for the Pennsylvania Department of Corrections in their official capacities, App. 32–34, Williams appropriately named a public entity as the

defendant for his ADA claims. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (The Pennsylvania Department of Corrections "fall[s] squarely within the statutory definition of 'public entity.'").

**b) Williams alleged disability discrimination by pleading a failure to accommodate.**

The district court erred in holding that Williams failed to plead disability discrimination. The district court concluded that Williams had attributed discrimination against him to personal prejudice against indigent prisoners, not prejudice against people with disabilities. App. 24. But under Title II, failure to accommodate *is* discrimination.

The Americans with Disabilities Act and the Rehabilitation Act (RA) "serve[] as twin pillars of federal disability discrimination law." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 109 (3d Cir. 2018). The Rehabilitation Act of 1973 was "aimed at eradicating discrimination against individuals with disabilities." *Id.* at 114 (*quoting Helen L. v. DiDario*, 46 F.3d 325, 330 (3d Cir. 1995), *as amended* (Feb. 2, 1995)). But "[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985). So the RA's "prohibition of discrimination on the basis of a disability included an affirmative obligation"—to make "reasonable accommodations" or "reasonable modifications." *Berardelli*, 900 F. 3d at 114–15

(*quoting Choate*, 469 U.S. at 300–01). In 1990, Congress—"acknowledg[ing] that the RA had 'shortcomings and deficiencies'"—enacted the ADA, which "le[ft] intact the 'scope of protection . . . under the [RA]'" but "extend[ed] its reach beyond federally funded programs to three 'major areas of public life.'" *Berardelli*, 900 F. 3d at 115 (quoting *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 120 (3d Cir. 1998); *PGA Tour*, 532 U.S. at 675). Accordingly, a plaintiff alleging discrimination under the ADA does not have to show animus or even unequal treatment; the failure to affirmatively provide reasonable accommodations is a violation of the Act. *Montanez*, 154 F.4th at 148 ("A plaintiff can meet the fourth element of a prima facie [ADA] case—discrimination 'by reason of his disability'—by showing invidious discrimination *or* a failure to provide reasonable accommodations." (emphasis added)). And, as explained below, Williams plausibly pled a failure to reasonably accommodate his disability.

c) **Williams plausibly alleged a failure to reasonably accommodate his disability.**

The district court also erred in holding that, because Williams's accommodation request was granted "not in the exact way he desired," App. 24, he had not alleged a failure to accommodate. A public entity's duty to accommodate is "at its apex in the prison context 'because inmates necessarily rely totally upon [prisons] for all of their needs while in custody.'" *Montanez*, 154 F.4th at 144 (quoting *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 269 (D.D.C. 2015)).

To state a claim for failure to accommodate, Williams need only allege that the alternate accommodation did not allow him "meaningful access" to the prison's programs. *Berardelli*, 900 F.3d at 125 ("While a plaintiff 'may not insist on a particular accommodation if another reasonable accommodation was offered,' such an alternative . . . also must provide that 'meaningful access.'" (citing Third Circuit Model Civil Jury Instructions § 9.1.3; *Choate*, 469 U.S. at 301)). This inquiry "is highly fact-specific, requiring a case-by-case determination." *Hovsons, Inc. v. Twp. of Brick*, 89 F.3d 1096, 1104 (3d Cir. 1996) (*quoting United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994). Accordingly, whether a requested accommodation is reasonable and thus required "is usually inappropriate to resolve . . . on a motion to dismiss." *Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 458 (E.D. Pa. 2014).

Williams's allegations easily establish the Department of Corrections' failure to provide reasonable accommodations. In *Berardelli*, this Court reviewed a school district's proposed alternatives to a student's requested accommodation and concluded the alternative accommodations "fell woefully short" at providing meaningful access: the student experienced "the onset of seizures without prior notice, hours of lying in the principal's office without intervention, and significant increased anxiety," as well as "a gaping educational deficit." *Berardelli*, 900 F.3d at 125. Here, Williams has alleged that the soft braces and cervical collar fell woefully

short of providing him meaningful access to the prison's programs. He describes how the "soft, foam-type cervical collar" and "synthetic fabric, velcro closure-type wrist braces from which the rigid splint inserts had been purposely removed" "did not properly immobilize and support [his] neck and wrists, and therefore would not relieve the pressure in his neck and hands and wrists that causes his pain [nor] prevent his injuries and pain from worsening." App. 45. He alleged that these non-rigid braces "lacked any therapeutic value" and "were practically worthless" to mitigate his incapacitation. *Id.* The pain and immobility from his unaccommodated disabilities cause him to be unable to sleep, write, eat, attend to his personal hygiene, or perform any activity that requires repetitive use of his hands, arms, shoulders, neck, back, or head, App. 51–52. And as explained in greater detail below, sleep, food, and hygiene are each services within the meaning of the ADA. The district court erred in refusing to accept these well-pled allegations and in resolving the fact-intensive reasonableness inquiry on pre-service screening. Taking Williams's allegations as true, there is no basis in his complaint to conclude that he was granted reasonable accommodations to access prison programs as required by the ADA, and the district court erred in dismissing his ADA claims.

**d) Williams sought rigid braces as accommodations, not medical treatment.**

The district court also erred in holding that the DOC's refusal to provide rigid neck and wrist braces amounted to "treatment decisions." *See* App. 24. It is true that

"failure to provide adequate medical care to a disabled inmate does not, on its own, give rise to liability under the ADA." *Montanez*, 154 F.4th at 147. The ADA requires that the plaintiff was "excluded from participation in or denied the benefits of the services, programs, or activities of a public entity" "by reason of [their] disability." 42 U.S.C. § 12132. However, a prisoner can bring claims for inadequate medical care and failure to accommodate arising out of the same medical condition. *See, e.g.*, *Montanez*, 154 F.4th 127. In *Montanez*, a prisoner alleged a violation of his Eighth Amendment and ADA rights where he had become suddenly paralyzed and was given no help in moving to access health care, to toilet or shower, or to sleep comfortably. This Court held that he had stated claims under both the Eighth Amendment and the ADA because the prison's failure to provide him help to move around, to relieve and clean himself, and to sleep constituted exclusion from prison services. *Montanez*, 154 F.4th at 147–48. Here, like in *Montanez*, Williams alleges that the prison's refusal to provide rigid neck and wrist braces prevented him from sleeping and toileting; he also alleges difficulty or inability to eat, writing, and engaging in recreation. While he separately alleges inadequate medical care in violation of the Eighth Amendment, these allegations are more than sufficient to state a claim under the ADA.

**e) Williams alleged deliberate indifference.**

Finally, the district court erred in holding that Williams failed to state a claim for compensatory damages. To obtain compensatory damages under the ADA, a plaintiff must demonstrate deliberate indifference, "requiring both (1) 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood.'" *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013). Williams's complaint alleges each element.

First, Williams alleges that many DOC employees, including named Defendants, were aware of his medical conditions, his prior treatment, and his need for rigid neck and wrist braces. At intake, Williams advised medical staff at intake about his conditions and their effects. App. 42–43. Then for years, from admittance in 2019 until he made his accommodation request in 2023, Williams requested that DOC medical staff provide him with a neck brace and wrist splints. App. 43–44. In "multiple" interviews with Huner and Does 1 and 2, Williams described his diagnosis, pain, and the type of supports he needs, and they acknowledged receipt of his medical records. App. 44. And when he was again denied rigid braces, Williams told Huner that the cervical collar and soft braces lacked therapeutic value because they would not immobilize his joints to relieve the pressure and pain. App. 45. He relayed this information in his grievance, which Hensley and Orlando denied, App. 46; in his grievance appeal, which Terra denied, App. 47–48; and in his final grievance appeal, which Varner and Moore denied on Doe 3's advice, App. 48–50.

These allegations provide more than enough basis to infer DOC's awareness that Williams was likely not being adequately accommodated.

Second, Williams alleges that no DOC employee ever acted to address his need for rigid medical devices, despite this notice. App. 45 (alleging that Williams told Huner that the cervical collar and soft braces lacked therapeutic value because they would not relieve the pressure and pain and that Huner refused to provide rigid braces); App. 46 (describing Hensley and Orlando's denial of his grievance); App. 48 (explaining Terra's denial of his grievance appeal); App. 48–49 (alleging that Varner and Moore denied his final grievance appeal after review by Doe 3). And though the district court credited Huner's claim that "security concerns" prevented the DOC from issuing rigid braces, App. 18, Williams's complaint supports the opposite inference: he alleges that other prisoners in his facility had rigid medical devices, including one man who used the exact type of rigid neck brace Williams needs. App. 50.

As the district court noted, "the risk of cognizable harm [can be] *so great and so obvious* that the risk and the failure to respond will alone support finding deliberate indifference." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (internal quotation marks and ellipses omitted, emphasis added). But the district court erred in concluding that Williams had not alleged facts suggesting the DOC had failed to respond to an obvious and significant risk of violation of his ADA

rights. Williams alleges that each Defendant was subjectively on notice of his need for accommodations, the ineffectiveness of the soft collar and nonrigid wrist braces, and the debilitating impact of his unaccommodated disabilities. And he alleges that each failed to provide him with an accommodation that would allow him meaningful access to prison services like sleep, toileting, food, and recreation, despite the fact that other prisoners had been provided the accommodation he needed. Williams has plausibly pled the DOC's deliberate indifference, and thus the district court erred in dismissing his claims for compensatory damages under the ADA.

**f) There are no alternative grounds for affirmance.**

There are no additional grounds to affirm the district court's dismissal: Williams plausibly pled each element of his ADA claim. "To state a claim for disability-based discrimination, a plaintiff must show that: (1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or other activities for which a public entity is responsible, or was otherwise subjected to discrimination by a public entity; (4) by reason of his disability." *Montanez*, 154 F.4th at 146.

As a state prisoner, Williams is a "qualified individual." App. 42; *Montanez*, 154 F.4th at 146. His neck, hand, and wrist conditions constitute a "disability" under the ADA because they "substantially limit[] one of more major life activities," namely sleeping, attending to his own hygiene, eating, and performing manual tasks

with his hands such as holding objects securely. 42 U.S.C. § 12102; App. 51–52. And he has alleged inability to access several prison "services, programs, or other activities." "The phrase 'service, program, or activity' under Title II [of the ADA] . . . is 'extremely broad in scope and includes anything a public entity does.'" *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019). Williams is unable to sleep for more than a few hours at a time and awakes in great pain. App. 51–52; *see Montanez*, 154 F.4th at 148 (holding that prison officials' refusal to provide "handicap-accessible sleeping arrangement" and an additional mattress to manage back pain constituted denial of "a reasonable accommodation necessary for him to sleep without significant pain" in violation of ADA). He alleges significant difficulty and sometimes inability to clean himself after toileting. App. 52; *see Montanez*, 154. F.4th at 147 (leaving a prisoner no "way to relieve himself with dignity" is a "textbook example of a disabled prisoner being denied access to a fundamental prison service"); *cf. Furgess*, 933 F.3d at 289–90 (holding that provision of showers is a service, program, or activity). Williams has alleged that the pain and lack of mobility in his hands is so great that he struggles to feed himself. App. 52; *see Montanez*, 154 F.4th at 147 (citing approvingly *McDaniel v. Syed*, 115 F.4th 805, 823 (7th Cir. 2024), which held that "meals" are a qualifying program or activity). And he has alleged that other prisoners have been issued rigid metal and plastic medical devices, App. 50, suggesting that the accommodations are available in the

facility. Williams's alleged deprivation of access to any of these services would suffice to state a claim under the ADA.

## II. Williams Stated a Claim Under the Eighth Amendment

The Eighth Amendment obligates prison officials to provide medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). When prison officials are deliberately indifferent to a prisoner's serious medical need, they inflict the "unnecessary and wanton infliction of pain" forbidden by the Eighth Amendment. *Id.* at 104.

The district court erred in dismissing Williams's claims under the Eighth Amendment. This Court has long held that grossly inadequate care, not only a total denial, can violate the Eighth Amendment. Further, the district court erred in crediting one Defendant's "expressed security concerns" instead of the well-pled allegations in Williams's complaint: there is no basis in his pleadings to conclude that institutional security, rather than deliberate indifference, motivated Defendants, particularly with respect to the denial of pain medication. And though the district court failed to analyze it, Williams stated an Eighth Amendment violation based on Defendants' persistent refusal to treat his debilitating pain, and his allegations of subjective notice and failure to act suffice to plead deliberate indifference as to each Defendant. The district court erred in concluding otherwise.

### a) Grossly inadequate medical care, not only a total denial of care, violates the Eighth Amendment.

The district court erred in dismissing Williams's Eighth Amendment claim because he had received inadequate care rather than a total denial of care. *See* App. 18. This Court has long recognized that "there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements." *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d. Cir. 2017). And "[p]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted). Williams's claims are analogous to those in *Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999). There, diabetic prisoners brought an Eighth Amendment claim based on constitutionally inadequate medical care: plaintiffs received only one insulin shot per day, were not able to monitor their blood sugar on a daily basis, were not provided diabetes-appropriate diets, and were not monitored for progression of the disease through, for example, annual eye exams. *Id.* at 195. Plaintiffs acknowledged that defendants provided some medical care, such as periodic blood sugar monitoring and insulin. *Id.* But then-Judge Alito, writing for this Court, accepted without objection that "grossly inadequate," rather than nonexistent, medical care could violate the Eighth Amendment. *Id.* at 194. The proper analysis is to "determine whether the defendants' actions . . . were consistent with the requisite *level* of care owed under the Eighth Amendment." *Id.* at 199 (emphasis added).

Here, Williams has alleged that, after years of complaining of his incapacitating pain to DOC health care providers and ultimately to each Defendant, he was offered only over-the-counter pain medication, which was "completely ineffective" to manage his debilitating pain. App. 44. Medications like ibuprofen and naproxen may be cheaper and easier to administer in the prison setting than stronger medication, but these concerns do not authorize prison officials to disregard Williams's serious medical needs. Williams has alleged grossly inadequate treatment for his debilitating pain, and the district court erred in dismissing his Eighth Amendment claim because he did not allege total denial of care. *See also Palakovic*, 854 F.3d at 227 (holding that "the acknowledgment that [the plaintiff] received some mental healthcare during his incarceration [does not] preclude[] this claim" of deliberate indifference); *Monmouth*, 834 F.2d at 346 (citing approvingly *Robinson v. Moreland*, 655 F.2d 887, 889–90 (8th Cir. 1981), which held that the jury could properly conclude providing an ice pack for an inmate's fractured hand constituted deliberate indifference where the prison guard knew medical care was needed)).

**b) The district court did not even analyze Williams's Eighth Amendment claim arising from the denial of pain medication.**

The district court also erred by dismissing Williams's Eighth Amendment claim without analyzing his deprivation of effective pain medication. Williams alleged that the over-the-counter pain medication provided to treat his pain was

"completely ineffective." App. 44. As a result of prison officials' failure to manage his pain, he experiences a "debilitating level of pain in his neck, shoulders, arms, hands, fingers, and wrists." App. 51. He "awakens several times during any period of sleep . . . sobbing, moaning, or whimpering from the pain." *Id.* He experiences headaches that "begin[] with a hot, fiery pain that shoots up the back and around both sides of his head to his eyes" and that causes his vision to dim and to feel as though he is passing out from the pain. App. 51–52. There is no basis in the complaint from which to conclude that Defendants denied Williams's adequate pain medication due to security concerns; Huner made the comment in question in response to his objection to the soft wrist braces and collar. App. 45. As explained in greater detail below, Williams has pled an Eighth Amendment violation based on the denial of pain management, and the district court erred in dismissing his claims without analyzing this basis.

**c) There is no alternative basis to affirm.**

There is no additional basis upon which to affirm the dismissal of Williams's Eighth Amendment claims. To plead an Eighth Amendment violation for denial of medical care, "plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious." *Rouse*, 182 F.3d at 197. Williams's allegations regarding his pain and denial of effective pain management satisfy both elements.

*1) Williams's debilitating pain is a serious medical need.*

First, Williams has pled his serious medical need. This Court has explained that "[t]he seriousness of an inmate's medical need may . . . be determined by reference to the effect of denying the particular treatment." *Monmouth Cnty. Corr. Inst. Inmates*, 834 F.2d at 346. "[I]f 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id*. (citing *Estelle*, 429 U.S. at 103). Williams alleged that his conditions cause him "debilitating pain," App. 43, that the ibuprofen or naproxen he was offered was "ridiculously inadequate to relieve the debilitating level of pain that [his] injuries cause him," App. 44, and that Defendants' "refusal to provide Plaintiff adequate pain medication . . . has caused [him] to suffer an increased, debilitating level of pain in his neck, shoulders, arms, hands, fingers, and wrists for an extended period of time," App. 51. When he is able to sleep, he wakes up crying or whimpering from the pain. *Id.* When he moves his head or neck in certain ways, he experiences fiery pain up his back and into his head that makes him feel as though he is about to pass out. App. 51–52. This extreme pain is purposeless and avoidable—Williams was able to manage it before his incarceration with standard prescriptions. App. 42–43. These allegations are more than sufficient to plead serious medical need.

*2) Williams plausibly pleads each Defendants' deliberate indifference to his pain.*

Second, Williams's complaint adequately alleges each Defendant's deliberate indifference to his need for pain management. To plead deliberate indifference, Williams must allege facts to show that "the official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This Court has found deliberate indifference where "there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence." *Natale*, 318 F.3d at 582 (citations omitted). Williams claims that he notified each Defendant of his pain. He told Huner and Does 1 and 2 about the "debilitating level of pain," his need for effective pain medication, and the impact of the pain on his life. App. 44–45. They told him they had received and were reviewing his medical records. App. 44. He filed a grievance detailing his substantial pain, which Hensley and Orlando denied. App. 46. He appealed that grievance, once again explaining the pain his conditions caused him, and Terra denied the appeal. App. 47–48. He filed a final appeal, which Varner and Moore denied after consultation with DOC Bureau of Health Care Services staff member Doe 3. App. 48–50. Williams made consistent complaints about his severe pain—and the inadequacy of the ibuprofen and naproxen he had been given—for years while seeking treatment, including to each Defendant. This provides ample evidence of his

serious medical need, yet no Defendant acted to address his pain. App. 44–45 (Huner and Does 1 and 2 refused to prescribe pain medication stronger than ibuprofen or naproxen); App. 46 (Hensley and Orlando denied the grievance); App. 48 (Terra denied the appeal); App. 49–50 (Moore and Varner upheld the denial on Doe 3's advice). Thus, Williams's complaint plausibly pleads that each Defendant was subjectively aware of and yet took no action to treat his debilitating pain.

Of course, the Eighth Amendment is not violated by a difference of opinion on medical care. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017). Accordingly, this Court has—largely in unpublished opinions—rejected prisoner claims about the denial of pain medication when it concludes that the denial arose from a disagreement over the appropriate treatment. *See, e.g.*, *Hairston v. Dir. Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *Allah v. Thomas*, 679 F. App'x 216 (3d Cir. 2017). Here, however, there is no basis from which to conclude that Defendants' denial of adequate pain medication was based in medical judgment. In fact, the complaint suggests the opposite. Williams alleges that an outside medical provider prescribed him Vicodin and Valium for his injuries and that he was never examined by DOC providers to determine the extent of his injuries or the severity of the pain they inflict. App. 43, 50. Instead of evaluating Williams or making a plan to manage his pain, Huner and Does 1 and 2 summarily rejected his request for effective medication. App. 44–45. Huner and Does 1 and 2 are free to claim a

difference of medical opinion, but construing his complaint liberally, there is no way to infer from Williams's allegations that any official exercised medical judgment in denying his requests for pain management. Thus, Williams's Eighth Amendment claims cannot be dismissed on this basis.

The district court also concluded that Orlando, Hensley, Terra, Varner, Moore, and Doe 3 were not sufficiently involved in the alleged Eighth Amendment violation because each was only involved in reviewing and denying Williams's grievances and "in general, '[m]erely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim.'" App. 21 (citing *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (per curiam); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (per curiam); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (per curiam). However, several of the cases the district court cites were decided after defendants had appeared and demonstrated lack of personal involvement, and each case featured less involvement by the officials reviewing grievances than Williams's complaint—construed liberally—alleges.

In *Tenon*, this Court affirmed summary judgment for a prison official who had reviewed the prisoner's complaint of inadequate healthcare due to the official's lack of personal involvement; there, the advanced procedural stage meant that the official

had submitted evidence to indicate that his role was only to administer healthcare operations, not to substantively approve decisions. 606 F. App'x at 688. Here, there is no evidence to suggest that Orlando, Hensley, Terra, Verner, Moore, and Doe 3 do not have substantive approval responsibilities: Williams alleges that each had subjective knowledge of his pain and still affirmed Huner and Does 1 and 2's decisions. Similarly, *Curtis* was resolved at the summary judgement stage, after defendants had appeared and shown lack of personal involvement. 763 F. App'x at 263. In *Folk*, this Court affirmed the dismissal of an Eighth Amendment claim on the basis that several defendants who "were apparently involved in responding to some of Folk's prison grievances" lacked personal involvement. 741 F. App'x at 51. However, there the plaintiff's claims were based on single instances of unlawful conduct—for example, denial of access to the prison law library. *Id.* at 49–50. In this context, "there [were] no allegations linking [the grievance reviewers] to the underlying incidents." *Id.* at 51. Here, liberally construing Williams's complaint, there is a link between Orlando, Hensley, Terra, Verner, Moore, and Doe 3 and the constitutional violation: each was aware of Williams's extreme pain and had the opportunity to intervene but chose to do nothing. Similarly, this Court affirmed the dismissal of an inadequate medical care claim in *Brooks* based on the fact that the plaintiff had not shown "personal direction, actual knowledge, or acquiescence." 167 F. App'x at 925. As explained above, Williams's complaint alleges personal

knowledge and acquiescence to the ongoing violation of his right to adequate medical care.

Williams alleges specific facts to show subjective knowledge of his pain and failure to act. Defendants may appear and dispute their awareness or ability to intervene, but Williams has made sufficient allegations against each.

## III. The District Court's Errors Extended to Procedure as well as Substance

Beyond erring in its assessment of Williams's substantive claims, the district court incorrectly barred Williams from amending his complaint and prematurely resolved his request for injunctive relief.

### a) The district court should have given Williams leave to amend his ADA and Eighth Amendment claims.

First, even were this Court to agree with the district court that Williams failed to state a claim under the ADA and Eighth Amendment, Williams should have been given the opportunity to amend. "[L]eave to amend should be liberally given unless amendment would be inequitable or futile." *Montanez*, 154 F.4th at 151. This standard is particularly liberal for *pro se* plaintiffs, and this Court recently reaffirmed the Third Circuit's "longstanding policy of allowing pro se plaintiffs to amend their complaints before the court rules upon defendants' motions to dismiss." *Id.* (quoting *Roman v. Jeffes*, 904 F.2d 192, 196 n.8 (3d Cir. 1990)). The district court concluded that the deficiencies in Williams's ADA and Eighth Amendment claims rendered amendment futile. App. 18, 25. As explained above, however, the district court erred

in its assessment of Williams's claims. Williams's complaint plausibly alleged ADA and Eighth Amendment claims against each Defendant. Even if this Court determines his complaint was insufficiently clear, he should be given the opportunity to amend to clarify his claims and their factual basis. And to the extent that Williams's meritorious ADA and Eighth Amendment claims require further factual support, the interest of justice and the court's "special obligation" to pro se plaintiffs require he be given the opportunity to provide it. *Montanez*, 154 F.4th at 151; Fed. R. Civ. P. 15(a).[2]

**b) The district court erred in dismissing Williams's claims for injunctive relief.**

Finally, the district court erred in resolving the question of remedy at the prescreening stage. App. 13 n.4. The question of the remedy for the alleged violations is properly determined later in the litigation, after liability has been established. Fed. R. Civ. P. 54(c) (instructing that non-default judgments "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"); *In re Sunrise Securities Litigation*, 793 F. Supp. 1306, 1327 (E.D. Pa. 1992) ("[I]t is improper to dismiss the pleadings" so long as the court can

[2] The district court appeared to think there was merit to allowing Williams to amend, as it instructed that Williams "may include this claim [for injunctive relief] in an amended complaint if he can assert allegations as described herein." App. 13 n.4. Puzzlingly, however, the district court denied Williams leave to amend his federal law claims.

"ascertain[] from the face of the complaint that *some* relief can be granted.") Instead, the district court applied the standard for preliminary injunctions to Williams's request for a permanent injunction and cited caselaw from the 1930s about feared future injury to address Williams's request for accommodations and treatment that he is currently denied. App. 13 n.4 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982); *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931)). The district court erred in dismissing Williams's claims for injunctive relief.

## CONCLUSION

For the foregoing reasons, the district court decision should be reversed and the case should be remanded.

September 30, 2026

Respectfully submitted,

/s/ *Samuel Weiss*
Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW, Front 1
#33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant*

On the brief: Reilly Johnson
Student, Harvard Law School

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume, typeface, and type-style requirements of Rule 32(a) of the Federal Rules of Appellate Procedure and Rule 32 of the 3rd Circuit Rules. This brief contains 8,089 words, excluding the parts of the document exempted by Fed. R. App. 32(f), as calculated by Microsoft Word. It was prepared in 14-point font using Time New Roman, a proportionally spaced typeface.

/s/ *Samuel Weiss*
Samuel Weiss

## CERTIFICATE OF SERVICE

I certify that on September 30, 2026, I electronically transmitted the foregoing brief to the Clerk of the Court using the appellate CM/ECF System, causing it to be served on counsel of record, who are all registered CM/ECF users.

/s/ *Samuel Weiss*
Samuel Weiss