**No. 25-2539**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

JOHN WILLIAMS,

Plaintiff-Appellant,

v.

BRITTANY HUNER, et al.,

Defendants-Appellees.

On Appeal from the U.S. District Court
for the Eastern District of Pennsylvania,
No. 2:25-cv-00928, Hon. Mitchell S. Goldberg

# APPELLANT'S APPENDIX

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW, Front 1
#33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant*

On the brief: Reilly Johnson
Student, Harvard Law School

## Volume I of II

## (Bound with Appellant's Brief)

Notice of Appeal (ECF No. 8) filed August 4, 2025 ............................ App. 1

Order (ECF No. 7) filed July 22, 2025 ........................................... App. 4

Memorandum (ECF No. 6) filed July 22, 2025 .................................. App. 6

## Volume II of II

District Court Docket Entries (2:25-cv-00928) ................................. App. 28

Complaint (ECF No. 1) filed February 20, 2025 .............................. App. 31

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>Plaintiff | ) | CASE NO. 2:25-CV-0928 |
| | ) | |
| v. | ) | |
| | ) | |
| BRITTANY HUNER, *et al.*,<br>Defendants | ) | |

**NOTICE OF APPEAL**

Notice is hereby given that John Williams, Plaintiff in the above-captioned civil rights action, hereby appeals to the United States Court of Appeals for the Third Circuit from the final judgement entered in this matter on July 22, 2025, by the United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted,

John Williams
DOC #NW7468
Pennsylvania Dept. of Corrections
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA 19426

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>Plaintiff<br><br>v.<br><br>BRITTANY HUNER, *et al.*,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 2:25-CV-0928 |

**NOTICE OF INMATE FILING**

I am the Plaintiff in the above-captioned civil rights action and an inmate confined in a prison institution. Today, August 2, 2025, I am depositing a Notice of Appeal in this matter in my prison institution's inmate mailbox. USPS First-Class postage is being prepaid by the institution on my behalf.

I declare under the penalties for perjury provided for by 28 U.S.C. §1746 that the aforegoing statement is true and correct. Executed this 2nd day of August, 2025.

John Williams
DOC #NW7468
Pennsylvania Dept. of Corrections
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA 19426

US POSTAGE
quadient
FIRST-CLASS MAIL
IMI
$000.74º
08/04/2025 ZIP 19426
043M31248366

PHILADELPHIA PA 190
5 AUG 2025 PM 6 L

U.S.M.S.
X-RAY

United States District Court
Eastern District of Pennsylvania
Office of the Clerk
United States Courthouse
601 Market Street
Philadelphia, PA 19106-9865

19106-179699

RECEIVED
AUG - 7 2025

John Williams
DOC #NW7468
Pennsylvania Dept. of Corrections
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA 19426

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN WILLIAMS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-0928** |
| | : | |
| **BRITTANY HUNER, *et al*.,** | : | |
| **Defendants.** | : | |

**ORDER**

AND NOW, this 22nd day of July, 2025, upon consideration of Plaintiff John Williams's Motion to Proceed *In Forma Pauperis* (ECF No. 4), his Prisoner Trust Fund Account Statement (ECF No. 5), and his *pro se* Complaint (ECF No. 1), it is **ORDERED** that:

1. Leave to proceed *in forma pauperis* is **GRANTED** pursuant to 28 U.S.C. § 1915.

2. John Huner, #NW-7468, shall pay the full filing fee of $350 in installments, pursuant to 28 U.S.C. § 1915(b), regardless of the outcome of this case. The Court directs the Superintendent of SCI Phoenix or other appropriate official to assess an initial filing fee of 20% of the greater of (a) the average monthly deposits to Williams's inmate account; or (b) the average monthly balance in Williams's inmate account for the six-month period immediately preceding the filing of this case. The Superintendent or other appropriate official shall calculate, collect, and forward the initial payment assessed pursuant to this Order to the Court with a reference to the docket number for this case. In each succeeding month when the amount in Williams's inmate trust fund account exceeds $10.00, the Superintendent or other appropriate official shall forward payments to the Clerk of Court equaling 20% of the preceding month's income credited to Williams's inmate account until the fees are paid. Each payment shall refer to the docket number for this case.

3. The Clerk of Court is **DIRECTED** to send a copy of this order to the Superintendent of SCI Phoenix.

4. The Complaint is **DEEMED** filed.

5. The Complaint is **DISMISSED IN PART WITH PREJUDICE AND IN PART WITHOUT PREJUDICE** as follows:

a. Williams's constitutional claims and his derivative supervisory liability claims, his claims asserted under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12165 ("ADA"), his claims against Defendants Gina Orlando, Charles Hensley, Joseph Terra, Dorina Varner, Keri Moore, and Doe 3 based on their participation in the grievance process, his request for declaratory and injunctive relief, and his official capacity claims are **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for the reasons stated in the accompanying Memorandum Opinion.

b. Williams's state law claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction but without leave to amend.

6. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**BY THE COURT:**

***/s/ Mitchell S. Goldberg***

**MITCHELL S. GOLDBERG, J.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN WILLIAMS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-0928** |
| | : | |
| **BRITTANY HUNER, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**GOLDBERG, J.** **JULY 22, 2025**

Plaintiff John Williams, a convicted prisoner currently incarcerated at SCI Phoenix, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights arising from alleged deliberate indifference to his serious medical needs. Currently before the Court are Williams's Complaint ("Compl." (ECF No. 1)), his Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 4), and his Prisoner Trust Fund Account Statement. (ECF No. 5.) Williams asserts claims against the following SCI Phoenix employees: Correctional Health Care Administrator Brittany Huner, Health Care Providers Jane Does 1 and 2, Facility Grievance Coordinator Gina Orlando, Deputy Superintendent for Centralized Services Charles Hensley, and Superintendent Joseph Terra. (Compl. at 2-4.) He also asserts claims against Chief Grievance Officer Dorina Varner and Assistant Chief Grievance Officer Keri Moore, who are alleged to be employees of the Secretary's Office of Inmate Grievances & Appeals, and Bureau of Health Care Services employee John or Jane Doe 3. (*Id*. at 4.) Williams asserts his claims against the Defendants in their individual and official capacities. (*Id*. at 2-4.) For the following reasons, the Court will grant Williams leave to proceed *in forma pauperis*. Williams's constitutional claims

and his derivative supervisory liability claims, his claims asserted under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12165 ("ADA"), his claims against Defendants Orlando, Hensley, Terra, Varner, Moore, and Doe 3 based on their participation in the grievance process, his request for declaratory and injunctive relief, and his official capacity claims will be dismissed with prejudice. Williams's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction, but without leave to amend.

## I. FACTUAL ALLEGATIONS[1]

The gravamen of Williams's claim is that he requested and was denied rigid braces for his neck and wrists to relieve pain associated with damaged cervical vertebrae and Carpal Tunnel Syndrome, respectively, and to prevent further injury. Williams alleges that he arrived at SCI Camp Hill on July 22, 2019. (Compl. at 12.) Upon arrival, he underwent an intake screening, diagnostic, and classification process required of all newly committed state prisoners. (*Id.*) During this process, Williams advised medical staff that in June 2017, following an examination, he was diagnosed with damaged cervical vertebrae and spinal cord nerve impingement in his neck, and chronic, bilateral Carpal Tunnel Syndrome and arthritis in his fingers, hands, and wrists. (*Id.*) He advised medical personnel that he had been receiving treatment for these conditions, and that these conditions rendered him disabled in that he suffered from a limited range of motion and debilitating pain that prevented him from reclining comfortably and also impeded his ability to perform daily

---

[1] The factual allegations set forth in this Memorandum are taken from Williams's Complaint (ECF No. 1). The Court adopts the pagination supplied by the CM/ECF docketing system. Where appropriate, grammar, spelling, and punctuation errors in Williams's pleading will be corrected for clarity. Williams includes the following Exhibits with his Complaint: a completed grievance form, an Initial Review Response, a completed Inmate Appeal to Facility Manager Grievance, a Facility Manager's Appeal Response, a completed Inmate Appeal to Final Review Grievance, a Grievance Referral Notice, and a Final Appeal Decision. (Compl. at 37-44.)

functions such as hand writing notes or legal documents, gripping or holding objects, lifting or carrying objects, handwashing his clothing, attending to his personal hygiene, using power tools, or engaging in any repetitive use of his hands, arms, shoulders, neck and head. (*Id*. at 12-13.) He further advised prison medical personnel that before his incarceration an outside physician had prescribed an adjustable rigid composite-plastic neck brace and rigid composite-plastic wrist guards, and instructed him to wear these devices as much as possible to immobilize and support his injured neck and wrists. (*Id*. at 13.) Additionally, Williams advised the SCI Camp Hill staff that he had been prescribed Vicodin for pain relief and Valium to help him sleep. (*Id*.) Despite these prescriptions, unidentified medical personnel told Williams he would not be provided with the neck or wrist braces or the Vicodin or Valium as long as he was a Department of Corrections ("DOC") inmate. (*Id*.)

Between October 2019 and June 2023, Williams experienced a steady increase in the severity of his pain and physical incapacitation. (*Id*. at 13.) During this period, he also fell out of his top bunk because of PTSD-related night terrors, further injuring his neck and wrists. (*Id*.) Williams requested that medical staff provide him with neck and wrist braces similar to those which had been previously prescribed to him. (*Id*.) He also requested medication to ease his pain. (*Id*.) However, he was consistently told by unidentified personnel that he would not be provided with rigid neck or wrist braces, and that only Ibuprofen or Naproxen would be provided for pain relief. (*Id*. at 14.) On June 30, 2023, Williams filed an ADA disability accommodation request with Defendant Huner, requesting that the DOC provide him with a rigid neck brace and wrist braces similar to those he had been prescribed in the past, and pain medication more effective than Ibuprofen or Naproxen. (*Id*.) Following Huner's receipt of the request, Williams was interviewed by Huner and Jane Does 1 and 2. (*Id*.) During the interview, Williams described his diagnoses,

the pain associated with his conditions, and the type of rigid braces that had been prescribed in the past, and also explained that the Ibuprofen and Naproxen he had been prescribed by DOC health care providers were completely ineffective for relieving his pain. (*Id.*) Williams was informed that Huner and Jane Does 1 and 2 had obtained his treatment records and were reviewing them for the purpose of making a decision regarding Williams's ADA disability accommodation request. (*Id.*) However, they continued to refuse to provide any pain medication other than Ibuprofen or Naproxen. (*Id.* at 14-15.)

On November 20, 2023, Huner advised Williams that his ADA accommodation request had been approved and issued him a cervical collar and wrist braces. (*Id.* at 15.) However, rather than the rigid braces he requested and had been previously prescribed, Williams received a soft, foam-like collar and fabric, Velcro-closure wrist braces from which the rigid inserts had been removed. (*Id.*) Williams complained that these neck and wrist braces did not properly immobilize his neck and wrists and therefore would not relieve pain or prevent further injury. (*Id.*) Huner responded that the rigid plastic neck brace and rigid inserts for the wrist braces were not allowed for security reasons. (*Id.*)

On November 25, 2023, Williams filed a grievance with Defendant Orlando asserting that the medical devices provided to him were worthless because they did not immobilize his neck and wrists enough to relieve his pain or prevent further injury. (*Id.* at 16.) He also asserted that other inmates had been issued medical devices that included rigid plastic and metal materials. (*Id.*) Finally, he asserted that Huner, the SCI Phoenix medical department, and the DOC were circumventing the requirements of the ADA and violating his rights as a disabled person by refusing to provide him with adequate medical devices. (*Id.*) On December 22, 2023, Williams received a response to his grievance prepared by Defendants Orlando and Hensley which denied

his grievance on the ground that metal and hard plastic were not permissible in a correctional setting, and that the devices issued to Williams provided appropriate support. (*Id.*) Williams alleges that the response to his grievance was "baseless, specious, and unfair" because medical devices including rigid plastic and metal are routinely provided to inmates at SCI Phoenix, and the devices issued to Williams provided inadequate support, were not the same as the ones prescribed to him before he was incarcerated, and did not provide adequate pain relief or protection from further injury. (*Id.* at 17.)

On January 5, 2024, Williams appealed the initial denial of his grievance to Defendant Terra, asserting that (1) he had specifically advised Huner and Does 1 and 2 that the rigid braces prescribed by his outside physician were necessary to relieve his pain and prevent further injury; (2) Huner and Does 1 and 2 had reviewed his medical records and were aware that he had been previously prescribed rigid braces and why; and (3) failure to ensure that Williams was provided with rigid braces would result in the worsening of his pain and possible further, irreparable injury to his neck and wrists. (*Id.*) On January 24, 2024, Terra denied Williams's appeal and approved Orlando and Hensley's denial of his initial grievance on the grounds that rigid braces were not permissible, and the braces issued to Williams provided adequate support. (*Id.* at 18.) Williams alleges that Terra's response was "baseless, specious, and unfair," because medical devices including rigid plastic and metal are routinely provided to inmates at SCI Phoenix, and the devices issued to Williams provided inadequate support, were not the same as the ones prescribed before Williams was incarcerated, and did not provide adequate pain relief or protection from further injury. (*Id.*)

On February 8, 2024. Williams filed a final grievance appeal of Orlando and Hensley's initial review response and Terra's appeal response with the DOC Secretary's Office of Inmate

Grievance Appeals, arguing that (1) the medical department routinely issued medical devices constructed of rigid materials, such as wheelchairs, crutches, leg braces, walking boots, and eyeglasses, to inmates, and the neck and wrist braces Williams requested posed much less of a safety threat than those items; (2) Huner and Does 1 and 2 were not trained and licensed physicians and their lay opinions as to the adequacy of the braces issued to Williams were not based on medical science but on their unwillingness to provide Williams with adequate medical care; and (3) Williams's medical treatment should not be conditioned on the hypothetical risk posed by the devices he had been previously prescribed. (*Id*. at 19.) On March 29, 2024, Varner and Moore served Williams notice that his appeal had been referred to the DOC Bureau of Health Care Services. (*Id*.) On June 24, 2024, Moore, Varner, and Doe 3 returned a final appeal response to Williams that upheld Orlando and Hensley's initial review and Terra's denial of his appeal on the grounds that, *inter alia*, the medical care provided to Williams was reasonable and appropriate, and Huner and Does 1 and 2 had not engaged in wrongdoing. (*Id*. at 19-20.) Williams alleges that the final appeal response provided by Moore, Varner, and Doe 3 contradicted the treatment provided by his physician prior to his incarceration though that plan had not been contraindicated based on any medical examination or diagnostic tests performed on Williams during his incarceration, and that it ignored the fact that other inmates were issued devices with metal and rigid plastic parts, including the identical neck brace that Williams had requested. (*Id*. at 20.)

Williams further alleges he has not been examined by a health care provider while in the custody of the DOC and has not undergone any diagnostic testing. (*Id*.) He claims that as a result, the decisions rendered by the Defendants with respect to the type of neck and wrist braces to be provided to him were not based on medical science, but instead were based on the cost or inconvenience of ordering the correct devices, or on the Defendants' personal prejudices against

confined and indigent state prisoners, and their unwillingness to provide medical care similar to that which was available to Williams before he became incarcerated. (*Id*. at 20-21.)

Williams alleges that as a result of the Defendants' conduct, he has experienced increased pain and disability, inability to sleep comfortably, headaches, and limited range of motion which impacts his ability to perform day-to-day tasks. (*Id*. at 21-22.) He has also experienced anxiety over the prospect of becoming permanently crippled, as well as associated psychological distress. (*Id*. at 22.) Williams asserts First, Eighth, and Fourteenth Amendment claims,[2] a claim under Title II of the ADA, and related state law claims. (*Id*. at 22-24.) As relief, Williams requests a declaratory judgment,[3] injunctive relief,[4] and money damages. (*Id*. at 24-25.)

---

[2] The Court understands Williams's Fourteenth Amendment claim to be based on the Defendants' alleged deliberate indifference to his serious medical needs. (*See, e.g*., Compl. at 23, Claim I.) Although the standards under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of analysis, *see Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care), because it appears that Williams was a convicted prisoner at the time of the events in question, the Eighth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Because the Complaint includes no facts that could support a plausible Fourteenth Amendment claim not based on alleged indifference to serious medical needs, Williams's Fourteenth Amendment claims will be dismissed without prejudice.

[3] Williams seeks a declaration that the Defendants' conduct violated his rights. (Compl. at 24.) However, declaratory relief is unavailable to adjudicate past conduct, so Williams's request for declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm."); *Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). For these reasons, Williams's request for declaratory relief will be denied with prejudice.

[4] Williams requests a mandatory injunction requiring the Defendants to provide him with rigid, composite-plastic neck brace and wrist splints similar to those prescribed to him before he became incarcerated, pain medication similar to Vicodin, and medical care from a physician specializing

## II. STANDARD OF REVIEW

The Court will grant Williams leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Williams is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021)

---

in the treatment of the conditions with which Williams has been diagnosed. (Compl. at 25.) Issuance of an injunction is an extraordinary remedy, granted only when a plaintiff faces irreparable injury. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982). In keeping with the general reluctance of any court to exercise its discretion in the absence of a compelling need for extraordinary relief, a plaintiff must allege a real danger that the act complained of will actually take place. An "injunction issues to prevent existing or presently threatened injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931). In light of the Court's dismissal of Williams's constitutional, ADA, and state law claims, his request for injunctive relief, too, will be dismissed. He may include this claim in an amended complaint if he can assert allegations as described herein.

[5] Because Williams is a prisoner, the Prison Litigation Reform Act requires that he pay the full filing fee in installments regardless of the outcome of this case.

(citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). Additionally, the Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").

## III. DISCUSSION

Williams asserts claims based on alleged violations of his constitutional rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

### A. Official Capacity Claims

Williams seeks recovery of money damages against the Defendants in their official capacities. All of the Defendants are identified as employees of the Pennsylvania DOC. The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are

also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court.

However, Williams may pursue his claims for money damages against state officials sued in their individual capacities, because state officials sued in their individual capacities are "persons" within the meaning of § 1983, s*ee Hafer*, 502 U.S. at 31, and the Eleventh Amendment does not bar suits for monetary damages brought under § 1983 against state officials in their individual capacities. *Id.* Additionally, the Eleventh Amendment does not generally bar prospective declaratory or injunctive relief. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (explaining that "official-capacity actions for prospective relief are not treated as actions against the State"); *see also Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (holding that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief."); *O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016). Thus, while Williams may pursue prospective injunctive relief on an official capacity claim against state employees, he may not pursue money damages on those claims. Accordingly, his official capacity claims, to the extent he seeks money damages, must be dismissed with prejudice. His official capacity claims seeking prospective injunctive relief will also be dismissed with prejudice in light of the dismissal of his constitutional and ADA claims, discussed below.

**B. Claims Based on Deliberate Indifference to Serious Medical Needs**

Williams asserts Eighth Amendment deliberate indifference claims against all of the named Defendants, yet none of the Defendants, other than Jane Does 1 and 2, is alleged to have been a

medical professional from whom Williams sought treatment. Additionally, other than Huner, who allegedly refused to provide Williams with the types of hard braces he desired, most of the Defendants are alleged to have done no more than participate in the grievance process after Williams was issued soft neck and wrist braces, but was denied the particular rigid neck and wrist braces he had been prescribed before he was incarcerated. These circumstances provide bases for dismissal of the claims Williams asserts against these Defendants, as discussed later. His Eighth Amendment claims, even if they were asserted against individuals personally involved in his care, are not plausible as pled.

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Inadequate medical care rises to the Eighth Amendment level only when a plaintiff can show both a serious medical need and acts or omissions by prison officials that indicate deliberate

indifference to that need. *Estelle v. Gamble,* 429 U.S. 97, 102, (1976). Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id*. (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'") (*per curiam*) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). Additionally, "if a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.").

Williams alleges that prior to his incarceration, he was diagnosed with damaged cervical vertebrae and spinal cord nerve impingement in his neck, and chronic, bilateral Carpal Tunnel Syndrome and arthritis in his fingers, hands, and wrists, for which he was prescribed rigid neck

and wrist braces. (Compl. at 12.) Upon arriving at SCI Camp Hill, he advised personnel of his diagnosis and treatment, but was not issued any braces. Years later, at SCI Phoenix, Williams sought braces as an ADA accommodation. While he was successful in obtaining an accommodation, the braces he was issued were soft, and Defendant Huner explained that the rigid plastic neck brace and rigid inserts for the wrist braces were not allowed for security reasons. (Compl. at 15.) Despite efforts to reverse this decision through the grievance process, Williams was not issued rigid braces, notwithstanding his claims that the soft braces are inadequate to relieve his pain and protect his joints. Williams's claim, as pled, is based on the adequacy of the care he has been receiving, not on a denial of care. As such, he has not stated a plausible claim for deliberate indifference to his serious medical needs. *Davis*, 597 F. App'x. at 45.

Additionally, as noted, Williams was told that the braces he wanted were not permitted for security reasons. Based on this expressed concern for institutional security, Williams has failed to establish a claim of deliberate indifference for the refusal to provide him with rigid braces. *See Whitley v. Albers,* 475 U.S. 312, 321–22 (1986) (holding that prison officials should be accorded wide ranging deference in the adoption and execution of policies necessary to preserve internal order and maintain institutional security); *Lerma v. Bell,* 2 F. App'x 782, 784 (9th Cir.2001) (affirming district court grant of summary judgment to defendants who confiscated the plaintiff's elastic knee brace for legitimate safety concerns); *Estien v. Showalter*, No. 13-2474, 2014 WL 4916333, at *11 (M.D. Pa. Sept. 30, 2014) (granting motion to dismiss where inmate failed to establish a claim of deliberate indifference based on medical personnel's failure to provide him with a thumb brace, citing safety concerns). In light of the nature of the deficiencies in Williams's Eighth Amendment claim, amendment would be futile, and, therefore, his Eighth Amendment claims will be dismissed with prejudice and without leave to amend. *Grayson v. Mayview State*

*Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002); *see also Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

**C. Supervisory Liability Claim**

Williams asserts that Defendants Orlando, Hensley, Terra, Moore, Varner, and Doe 3, "failed to adequately supervise, and explicitly ratified" the conduct of Defendants Huner and Does 1 and 2. (*See* Compl.) Other than this conclusory allegation that cannot state a plausible claim, *see Iqbal*, 556 U.S. at 678, the only allegations as to these Defendants describe their participation in the grievance process; they are not alleged to have otherwise participated in decisions regarding Williams's medical care and the absence of factual allegations describing their personal involvement in the alleged denial of his constitutional rights renders these claims not plausible. *See Rode*, 845 F.2d at 1207. Moreover, to the extent Williams seeks to assert claims against these Defendants based on the conduct of other SCI Phoenix employees, he cannot do so, because liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga*, *v. New Jersey Dept. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2023) (*per curiam*). Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d

Cir. 2005)). Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227. Additionally, a supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisory prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation). Because Williams has not stated a plausible underlying claim, the derivative claims based on the Defendants' alleged supervisory positions must also be dismissed with prejudice.

**D. Claims Based on Grievances**

Williams asserts claims against Orlando, Hensley, Terra, Varner, Moore, and Doe 3 based upon their participation in the grievance process following Huner and Does 1 and 2's refusal to issue him rigid neck and wrist braces in connection with his successful request for an ADA

accommodation. (*See* Compl., generally and Claim 2) These claims are not plausible because in general, "[m]erely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (*per curiam*); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) *(per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (*per curiam*) (defendants' alleged inappropriate responses to plaintiff's "later-filed grievances" were insufficient to establish those defendants' personal involvement in underlying wrongs).

Additionally, claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, claims such as those raised by Williams predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted));

*Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)). Accordingly, Williams's claims against these Defendants are not plausible and will be dismissed with prejudice.

**E. Claims Based on Violation of ADA**

Williams asserts claims under the ADA against all of the named Defendants. (*See* Compl.) The Court understands these claims to be based on the refusal to issue Williams rigid braces for his neck and wrists.[6] To allege a plausible violation of Title II of the ADA, a plaintiff must assert that (1) he is a "qualified individual with a disability;" (2) he is being excluded from participation in or being denied the benefits of some "services, programs, or activities," by reason of his disability; and (3) the entity which provides the service, program or activity is a public entity. *See, e.g., Layton v. Elder*, 143 F.3d 469, 472 (8th Cir.1998); *Bowers v. National Collegiate Athletic Ass'n*, 9 F. Supp. 2d 460, 475 (D.N.J. 1998); *Adelman v. Dunmire*, No. 95-4039, 1997 WL 164240 (E.D. Pa. Mar. 28, 1997). To be considered a "qualified individual with a disability" under the statute, a plaintiff must allege that he has a "disability" which is defined as "a physical or mental

---

[6] Section 202 of the ADA provides:

> Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The United States Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting the phrase "services, programs, or activities" includes recreational, medical, educational, and vocational prison programs).

impairment that substantially limits one or more major life activities of such individual. . . ." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12102(2)(A). With the passage of the Americans with Disabilities Act Amendments Act, Congress declared that "[t]he definition of disability shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." Pub. L. No. 110–325, §§ 2(b)(1)-(6), 3(2)(a), § 4(a), 122 Stat. 3553, 3555. Additionally, the ADAAA requires a "less searching analysis" of whether a plaintiff is "substantially limited." *Kravits v. Shinseki*, No. 10–861, 2012 WL 604169, at *7 (W.D. Pa. Feb. 24, 2012).

The proper defendant under a Title II claim is a public entity or an individual who controls or directs the functioning of the public entity. *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002). Therefore, as an initial matter, any individual capacity ADA claims against the Defendants must be dismissed with prejudice because they are not "public entities" within the meaning of the ADA, nor is it alleged that any of these Defendants controls or directs the functioning of an appropriately identified public entity. *See Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim.").

Williams's ADA claim, additionally, is not plausible as pled even if he had named an appropriate public entity defendant. Although Williams broadly alleges that he was discriminated against, he attributes the basis of the discrimination to cost-savings and "the Defendants' own personal prejudices against confined and indigent state prisoners" and not to any disability associated with his neck or wrist conditions. (*See* Compl. at 21.) Additionally, he concedes that when he requested an accommodation for his disability, it was granted, but not in the exact way he desired since he was issued soft neck and wrist braces rather than rigid devices. (*Id*. at 15.) The Defendants' refusal to provide rigid neck and wrist braces, rather than soft braces are treatment decisions and do not provide a basis for a plausible claim. *Nunez v. Prime Care Health, Inc.*, No. 19-0859, 2019 WL 1400466, at *1 n.3 (E.D. Pa. Mar. 27, 2019) ("decisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA," citing cases); *see also Kokinda*, 663 F. App'x at 159 ("The District Court was also correct to conclude . . . that Kokinda's ADA claims fail because the ADA prohibits disability-based discrimination, not inadequate treatment for the disability." (footnotes and internal quotations omitted)).

Additionally, monetary damages, such as those sought by Williams, are not available under the ADA absent a showing of intentional discrimination. *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018)). "To prove intentional discrimination, an ADA claimant must prove at least deliberate indifference, and to plead deliberate indifference, a claimant must allege (1) knowledge that a federally protected right is substantially likely to be violated and (2) failure to act despite that knowledge." *Id.* (internal citation and ellipses deleted). A plaintiff can plead deliberate indifference in two ways: "first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs,' or, second, by alleging facts indicating that [plaintiff] could prove that the risk of cognizable harm

was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference." *Id.* (internal quotation marks and ellipses deleted). Here, Williams has not identified any policy that resulted in a failure to respond to situations such as that in which Williams found himself, or, indeed, a failure to respond to any identified risk. To the contrary, Williams successfully petitioned for an accommodation for his disability – he simply was not satisfied with the accommodation provided.

Because amendment would not cure the deficiencies in Williams's ADA claims, they will be dismissed with prejudice. *Grayson*, 293 F.3d at 108; *Shane*, 213 F.3d at 116.

**F. State Law Claims**

Williams asserts professional negligence claims against Defendants Huner and Does 1 and 2, and asserts negligence claims and claims for aiding and abetting professional malpractice against Defendants Orlando, Hensley, Terra, Varner, Moore, Doe 3. (Compl. at 24.) Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any of Williams's state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the

state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Williams does not allege the citizenship of the parties. Rather, he provides only the address of SCI Phoenix for himself, and SCI Phoenix or DOC business addresses for the Defendants. (Compl. at 2-4.) All of the addresses are in Pennsylvania, which suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens. Accordingly, Williams has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any of the state law claims he intends to pursue. His state law claims will therefore be dismissed without prejudice for lack of subject matter jurisdiction and without leave to amend. Instead, Williams may pursue these claims in an appropriate state court.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Williams leave to proceed *in forma pauperis*. Williams's constitutional claims and his derivative supervisory liability claims, his claims asserted under Title II of the ADA, his claims against Defendants Orlando, Hensley, Terra, Varner, Moore, and Doe 3 based on their participation in the grievance process, his request for declaratory and injunctive relief, and his official capacity claims will be dismissed with prejudice.

Williams's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction, but without leave to amend.

An appropriate Order follows.

CLOSED,APPEAL,PS-C,PSLC-DP,PSO

# United States District Court
# Eastern District of Pennsylvania (Philadelphia)
# CIVIL DOCKET FOR CASE #: 2:25-cv-00928-MSG

WILLIAMS v. HUNER et al
Assigned to: DISTRICT JUDGE MITCHELL S. GOLDBERG
Case in other court: US COURT OF APPEALS, 25-02539
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 02/20/2025
Date Terminated: 07/22/2025
Jury Demand: None
Nature of Suit: 555 Prisoner Petitions: Prison Condition
Jurisdiction: Federal Question

**Plaintiff**

**JOHN WILLIAMS**

represented by **JOHN WILLIAMS**
NW-7468
SCI PHOENIX
1200 MOKYCHIC DRIVE
COLLEGEVILLE, PA 19426
PRO SE

V.

**Defendant**

**BRITTANY HUNER**

**Defendant**

**JANE DOE #1**

**Defendant**

**JANE DOE #2**

**Defendant**

**GINA ORLANDO**

**Defendant**

**CHARLES HENSLEY**

**Defendant**

**JOSEPH TERRA**

**Defendant**

**DORINA VARNER**

**Defendant**

**KERI MOORE**

**Defendant**

**JOHN OR JANE DOE #3**

| Date Filed | # | Docket Text |
|---|---|---|
| 02/20/2025 | 1 | COMPLAINT against CHARLES HENSLEY, BRITTANY HUNER, JANE DOE #1, JANE DOE #2, JOHN OR JANE DOE #3, KERI MOORE, GINA ORLANDO, JOSEPH TERRA, DORINA VARNER, filed by JOHN WILLIAMS. (FEE NOT PAID, NO IFP FILED)(amas) (Entered: 02/21/2025) |
| 02/20/2025 | 2 | PRO SE NOTICE RE:GUIDELINES (NOT MAILED TO PRO SE)(amas) (Entered: 02/21/2025) |
| 02/21/2025 | | Copy of Pro Se Guidelines (Doc. No. 2) mailed to Plaintiff on 2/21/2025. (ahf) (Entered: 02/21/2025) |
| 02/24/2025 | 3 | ORDER THAT PLAINTIFF HAVING SUBMITTED COMPLAINT WITH THE COURT WITHOUT EITHER PAYING THE FEES TO COMMENCE A CIVIL ACTION OR FILING A MOTION TO PROCEED IN FORMA PAUPERIS, PLAINTIFF MUST, WITHIN 30 DAYS OF THE DATE OF THIS ORDER, EITHER PAY $405 TO THE CLERK OF COURT, OR FILE A MOTION TO PROCEED IN FORMA PAUPERIS WITH A CERTIFIED COPY OF THE PRISONER ACCOUNT STATEMENT. IF PLAINTIFF FAILS TO COMPLY WITH THIS ORDER, THE CASE MAY BE DISMISSED WITHOUT FURTHER NOTICE FOR FAILURE TO PROSECUTE. SIGNED BY GEORGE V WYLESOL, CLERK OF COURT ON 2/24/25. 2/24/25 ENTERED AND COPIES NOT MAILED TO PRO SE. (amas) (Entered: 02/24/2025) |
| 02/24/2025 | | COPY OF ORDER (DOC. NO. 3) ALONG WITH BLANK IFP FORM MAILED TO PRO SE ON 2/24/2025. (ahf) (Entered: 02/24/2025) |
| 03/10/2025 | 4 | MOTION for Leave to Proceed in forma pauperis filed by JOHN WILLIAMS.(amas) (Entered: 03/12/2025) |
| 03/10/2025 | 5 | Prisoner Trust Fund Account Statement by JOHN WILLIAMS. (amas) (Entered: 03/12/2025) |
| 07/22/2025 | 6 | MEMORANDUM. SIGNED BY CHIEF JUDGE MITCHELL S. GOLDBERG ON 7/22/25. 7/22/25 ENTERED AND COPIES NOT MAILED TO PRO SE. (amas) (Entered: 07/22/2025) |
| 07/22/2025 | 7 | MEMORANDUM ORDER THAT LEAVE TO PROCEED IN FORMA PAUPERIS IS GRANTED. JOHN HUNER, #NW-7468, SHALL PAY THE FULL FILING FEE OF $350 IN INSTALLMENTS, PURSUANT TO 28 U.S.C. § 1915(B), REGARDLESS OF THE OUTCOME OF THIS CASE. THE CLERK OF COURT IS DIRECTED TO SEND A COPY OF THIS ORDER TO THE SUPERINTENDENT OF SCI PHOENIX. THE COMPLAINT IS DEEMED FILED. THE COMPLAINT IS DISMISSED IN PART WITH PREJUDICE AND IN PART WITHOUT PREJUDICE AS OUTLINED HEREIN. THE CLERK OF COURT IS DIRECTED TO CLOSE THIS CASE.SIGNED BY CHIEF JUDGE MITCHELL S. GOLDBERG ON 7/22/25. 7/22/25 ENTERED AND COPIES NOT MAILED TO PRO SE. (amas) (Entered: 07/22/2025) |
| 07/22/2025 | | DOC. NO. 7 FAXED TO THE SUPERINTENDENT OF SCI PHOENIX ON 7/22/25. (amas) (Entered: 07/22/2025) |
| 07/23/2025 | | COPY OF MEMO AND ORDER (DOC. NOS. 6 & 7) MAILED TO PRO SE ON 7/23/2025. (ahf) (Entered: 07/23/2025) |

| | | |
|---|---|---|
| 08/04/2025 | 8 | NOTICE OF APPEAL by JOHN WILLIAMS. (IFP GRANTED ) (amas) (Entered: 08/08/2025) |
| 08/12/2025 | 9 | NOTICE of Docketing Record on Appeal from USCA re 8 Notice of Appeal filed by JOHN WILLIAMS. USCA Case Number 25-2539 (amas) (Entered: 08/12/2025) |
| 09/25/2025 | 10 | Certified Copy of Order from U.S.C.A. Third Circuit that The Appellant's Motion for Leave to Proceed in Forma Pauperis is Granted. etc. (dt) (Entered: 09/25/2025) |
| 11/17/2025 | 11 | Filing fee: $ 32.60, receipt number 20033639 (sbt) (Entered: 11/18/2025) |
| 12/31/2025 | 12 | Filing fee: $ 13.80, receipt number 20034430 (sbt) (Entered: 01/02/2026) |
| 02/25/2026 | 13 | Filing fee: $ 13.20, receipt number 20035603 (sbt) (Entered: 02/26/2026) |
| 03/16/2026 | 14 | Filing fee: $ 11.40, receipt number 20036327 (sbt) (Entered: 03/25/2026) |
| 04/20/2026 | 15 | Filing fee: $ 21.40, receipt number 20036916 (sbt) (Entered: 04/22/2026) |
| 05/26/2026 | 16 | Filing fee: $ 13.80, receipt number 20037621 (sbt) (Entered: 05/28/2026) |
| 06/24/2026 | 17 | Filing fee: $ 13.20, receipt number 20038149 (sbt) (Entered: 07/01/2026) |
| 07/20/2026 | 18 | Filing fee: $ 12, receipt number 20038733 (sbt) (Entered: 07/22/2026) |
| 08/17/2026 | 19 | Filing fee: $ 13.20, receipt number 20039271 (sbt) (Entered: 08/21/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/22/2026 13:00:41 | | | |
| **PACER Login:** | thulikv1 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:25-cv-00928-MSG |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

Philadelphia Division

| | | |
|---|---|---|
| John Williams,<br>*Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*<br>-v-<br>Brittany Huner, *et al.*,<br>*Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | ) | Case No. __________<br>*(to be filled in by the Clerk's Office)* |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Prisoner Complaint)

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | John Williams |
| All other names by which you have been known: | DOC #NW7468 |
| ID Number | Pennsylvania Dept. of Corrections |
| Current Institution | SCI Phoenix |
| Address | 1200 Mokychic Drive<br>Collegeville, PA 19426 |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Brittany Huner |
| Job or Title *(if known)* | Correctional Health Care Administrator |
| Shield Number | SCI Phoenix |
| Employer | Pennsylvania Department of Corrections |
| Address | 1200 Mokychic Drive<br>Collegeville, PA 19426 |

☒ Individual capacity ☒ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Jane Doe #1 |
| Job or Title *(if known)* | Health Care Provider |
| Shield Number | SCI Phoenix |
| Employer | Pennsylvania Department of Corrections |
| Address | 1200 Mokychic Drive<br>Collegeville, PA 19426 |

☒ Individual capacity ☒ Official capacity

Defendant No. 3

| | |
|---|---|
| Name | Jane Doe #2 |
| Job or Title *(if known)* | Health Care Provider |
| Shield Number | SCI Phoenix |
| Employer | Pennsylvania Department of Corrections |
| Address | 1200 Mokychic Drive<br>Collegeville, PA 19426 |

☒ Individual capacity ☒ Official capacity

Defendant No. 4

| | |
|---|---|
| Name | Gina Orlando |
| Job or Title *(if known)* | Facility Grievance Coordinator |
| Shield Number | SCI Phoenix |
| Employer | Pennsylvania Department of Corrections |
| Address | 1200 Mokychic Drive<br>Collegeville, PA 19426 |

☒ Individual capacity ☒ Official capacity

**See additional Defendants next page*

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

See Plaintiff's Statement of Claims, appended hereto.

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

**ADDITIONAL DEFENDANTS:**

*Defendant No. 5:*
Charles Hensley
Deputy Superintendent for Centralized Services
SCI Phoenix
Pennsylvania Department of Corrections
1200 Mokychic Drive
Collegeville, PA 19426

*Defendant No. 6:*
Joseph Terra
Facility Manager/Superintendent
SCI Phoenix
Pennsylvania Department of Corrections
1200 Mokychic Drive
Collegeville, PA 19426

*Defendant No. 7:*
Dorina Varner
Chief Grievance Officer
Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

*Defendant No. 8:*
Keri Moore
Assistant Chief Grievance Officer
Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

*Defendant No. 9:*
John or Jane Doe #3
Bureau of Health Care Services
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

*The above-named Defendants are being sued in their individual and official capacities.

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

See Plaintiff's Statement of Facts, appended hereto.

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- ☐ Pretrial detainee
- ☐ Civilly committed detainee
- ☐ Immigration detainee
- ☒ Convicted and sentenced state prisoner
- ☐ Convicted and sentenced federal prisoner
- ☐ Other *(explain)*

## IV. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B. If the events giving rise to your claim arose in an institution, describe where and when they arose.

See Plaintiff's Statement of Facts, appended hereto.

C. What date and approximate time did the events giving rise to your claim(s) occur?

See Plaintiff's Statement of Facts, appended hereto.

D. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See Plaintiff's Statement of Facts, appended hereto.

## V. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

See Plaintiff's Injuries, appended hereto.

## VI. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

See Relief Requested by Plaintiff, appended hereto.

## VII. Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A. Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

- [x] Yes
- [ ] No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

SCI Phoenix

B. Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

- [x] Yes
- [ ] No
- [ ] Do not know

C. Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

- [x] Yes
- [ ] No
- [ ] Do not know

If yes, which claim(s)?

All of Plaintiff's claims, with the exception of his claims regarding the prison grievance process itself.

D. Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

- [x] Yes
- [ ] No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

- [ ] Yes
- [ ] No

E. If you did file a grievance:

1. Where did you file the grievance?

SCI Phoenix

2. What did you claim in your grievance?

See *Grievance Documentation*, appended hereto at **EXHIBIT A.**

3. What was the result, if any?

Plaintiff's grievance was denied.

4. What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

Plaintiff appealed his grievance decision at all levels of the prison grievance process and fully exhausted the administrative remedies available to him at his place of confinement.

F. If you did not file a grievance:

1. If there are any reasons why you did not file a grievance, state them here:

2. If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G. Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A. Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B. If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1. Parties to the previous lawsuit

   Plaintiff(s) __________

   Defendant(s) __________

2. Court *(if federal court, name the district; if state court, name the county and State)*

   __________

3. Docket or index number

   __________

4. Name of Judge assigned to your case

   __________

5. Approximate date of filing lawsuit

   __________

6. Is the case still pending?

   ☐ Yes

   ☐ No

   If no, give the approximate date of disposition. __________

7. What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

   __________

C. Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☒ Yes

☐ No

D. If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1. Parties to the previous lawsuit

   Plaintiff(s) (1) John Williams; (2) John Williams

   Defendant(s) (1) Correctional Lieutenant English, *et al.*; (2) Tom Wolf, *et al.*

2. Court *(if federal court, name the district; if state court, name the county and State)*

   (1) United States District Court for the Western District of Pennsylvania
   (2) United States District Court for the Western District of Pennsylvania

3. Docket or index number

   (1) 3:23-CV-0244; (2) 3:20-CV-0061

4. Name of Judge assigned to your case

   (1) U.S. District Judge Kim Gibson; (2) U.S. District Judge Stephanie Haines

5. Approximate date of filing lawsuit

   (1) September 2023; (2) April 1, 2020

6. Is the case still pending?

   ☒ Yes (1) *Williams v. English*, *et al.*, No. 3:23-CV-0244

   ☒ No (2) *Williams v. Wolf*, *et al.*, No. 3:20-CV-0061

   If no, give the approximate date of disposition

7. What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

   (1) Case still pending.
   (2) Summary judgement entered in favor of the Defendants due to Plaintiff's failure to properly exhaust the prison grievance process.

**PLAINTIFF'S STATEMENT OF FACTS**

The facts underlying Plaintiff's claims against the Defendants to the instant cause of action are as follows:

1. Plaintiff John Williams (hereinafter "Plaintiff") is currently serving a sentence of confinement in the Pennsylvania Department of Corrections (hereinafter "DOC") pursuant to the judgement of the Court of Common Pleas of Cumberland County, Pennsylvania. (See *Commonwealth v. Williams*, No. CP-21-CR-3640-2017).

2. Plaintiff arrived in the custody of the DOC on July 22, 2019, at the State Correctional Institution Camp Hill (hereinafter "SCI Camp Hill"), where he underwent the initial intake screening, diagnostic, and classification process the DOC requires of all newly-committed state prisoners serving a term of confinement in the DOC pursuant to the judgement of Pennsylvania state criminal trial courts. During this process, Plaintiff advised DOC medical staff that, in June 2017, prior to his arrest for the offenses of which he was convicted and is currently serving a sentence of confinement, Plaintiff underwent an extensive medical examination and diagnostic process which ultimately resulted in him being diagnosed with and treated for (1) damaged C-4, C-5, and C-6 cervical vertebrae and spinal cord nerve impingement in his neck, and (2) chronic, bilateral Carpal Tunnel Syndrome and arthritis in his fingers, hands, and wrists, by neurosurgeon Dr. Maria Elena Sumas of Carlisle, Pennsylvania. Plaintiff advised DOC medical staff that, as a result of his injuries, he is physically disabled and suffers from a limited range of motion and debilitating pain in his neck, hands, fingers, and wrists that prevents Plaintiff from reclining comfortably in bed or sleeping restfully, and impedes his ability to perform such mundane tasks or functions as, *inter alia*, handwriting personal correspondence or

legal documents, gripping or holding objects securely, lifting or carrying objects weighing more than 2-3 lbs., handwashing his personal clothing, opening doors, cleaning himself after defecation, using hand or power tools, and enaging in any physical activity that requires the repetitive use of his hands, arms, shoulders, neck, and head. Plaintiff described to DOC medical staff in detail the type, location, severity, and frequency of pain that his injuries typically caused him at that point in time. Plaintiff advised DOC medical staff that Dr. Sumas had prescribed him an adjustable, rigid, composite-plastic neck brace for his neck and rigid, composite plastic wrist splints for both of his hands and wrists, and had specifically advised Plaintiff to wear these medical devices as much as possible to immobilize and support his neck and wrists, relieve the pressure in his neck and wrists that was causing his pain, and prevent any further injury or damage to his neck, hands, wrists, and fingers. Plaintiff advised DOC medical staff that Dr. Sumas had also prescribed him Vicodin for pain relief and Valium to help him sleep at night despite the pain caused by his injuries. DOC medical staff advised Plaintiff that the DOC would not provide him either the neck brace and wrist splints, Vicodin, or Valium that Dr. Sumas had prescribed him as long as he was confined in the DOC.

3. On multiple occasions between the dates of October 17, 2019 and June 30, 2023, because Plaintiff was noting a steady increase in the severity of the pain and resultant physical incapacitation his injuries were causing him, and was frequently falling out of his top bunk as result of PTSD-related night terrors and flashbacks and risking further injury to his already fragile neck and hands, Plaintiff requested that DOC medical staff provide him with a neck brace and wrist splints similar in kind to those Dr. Sumas had prescribed to him, and prescribe him medication to relieve the debilitating pain that his injuries were

causing him. However, each of these particular DOC medical staff consistently indicated to Plaintiff that the DOC would not provide him a neck brace and wrist splints, and were unwilling to prescribe Plaintiff any medications other than Ibruprofen or Naproxen to relieve the pain caused by his injuries, both of which medications were ridiculously inadequate to relieve the debilitating level of pain that Plaintiff's injuries cause him.

4. On June 30, 2023, Plaintiff filed an ADA disability accommodation request with the Correctional Health Care Administrator at his place of confinement, Brittany Huner (hereinafter "CHCA Huner"), in which he requested that the DOC provide him with, *inter alia*, a rigid neck brace and wrist splints similar in kind to the devices provided to him by Dr. Sumas, and pain medication more effective than Ibuprofen or Naproxen. Following CHCA Huner's receipt of Plaintiff's disability accommodation request, Plaintiff was interviewed on multiple occasions by CHCA Huner and two unidentified health care providers, Jane Doe #1 and Jane Doe #2, at which times Plaintiff described in detail his injuries and diagnosis as explained to him by Dr. Sumas, the debilitating level of pain and suffering that he experiences on a daily basis as a result thereof, and the type of rigid composite-plastic neck brace and wrist splints that Dr. Sumas had prescribed to him for his injuries, and explained that the Ibuprofen and Naproxen that DOC health care providers had prescribed or offered to him were completely ineffective for relieving the type of debilitating pain his injuries caused him. At these interviews, CHCA Huner and Jane Does #1 and #2 acknowledged to Plaintiff that they had obtained a copy of his patient treatment records from Dr. Sumas and were reviewing them for the purpose of making a determination regarding Plaintiff's ADA disability accommodation request, but continued to refuse to prescribe Plaintiff any pain medication other than Ibuprofen or

Naproxen to relieve the debilitating pain his injuries were causing him.

5. On November 20, 2023, CHCA Huner called Plaintiff to the infirmary at his place of confinement, advised him that his ADA disability accommodation request had been approved, and issued him a cervical collar and two wrist braces in response to his ADA disability accommodation request. However, the cervical collar and wrist splints issued to Plaintiff by CHCA Huner were not in any way similar in kind to the adjustable, rigid, composite-plastic neck brace and rigid, composite-plastic wrist splints that Dr. Sumas had prescribed to him for his injuries, Plaintiff had described and requested in his ADA disability accommodation request, and Plaintiff had described in detail to CHCA Huner and Jane Does #1 and #2 at the interviews conducted by them during the ADA disability accommodation review process. Instead, CHCA Huner provided Plaintiff a soft, foam-type, cervical collar typically used by Emergency Medical Services personnel for transporting patients suspected of head and/or neck injuries from accident scenes to hospitals for emergency medical care, and synthetic fabric, velcro closure-type wrist braces from which the rigid splint inserts had been purposely removed. Plaintiff immediately complained to CHCA Huner that the neck brace and wrist splints at issue were not similar in kind to those prescribed to him by Dr. Sumas, lacked any therapeutic value whatsoever, and were practically worthless because they did not properly immobilize and support Plaintiff's neck and wrists, and therefore would not relieve the pressure in his neck and hands and wrists that causes his pain and prevent his injuries and pain from worsening. CHCA Huner replied: "I'm sorry, but this is the best I can do. The rigid plastic neck brace and the rigid inserts in the wrist splints are not allowed for security reasons."

6. On November 25, 2023, Plaintiff filed an inmate grievance with the Facility Grievance Coordinator at his place of confinement, Gina Orlando (hereinafter "Orlando"), restating his complaint to CHCA Huner that (1) the medical devices provided to him were practically worthless, and lacked any therapeutic value whatsoever, because these devices did not properly support and immobilize Plaintiff's neck and wrists enough to relieve at least *some* of his pain and prevent a worsening of his injuries and pain; (2) he had personally witnessed the medical department issue other inmates medical devices that were constructed of both rigid plastic and metal materials; and (3) CHCA Huner, the medical department, and the DOC were attempting to circumvent the objectives and requirements of the ADA and violating Plaintiff's rights as a disabled person by refusing to provide him with medical devices adequate to his injuries and disabilities. (See *Grievance Documentation*, appended hereto at **EXHIBIT A**). On December 22, 2023, Orlando approved and returned an initial review response to Plaintiff's grievance that was reviewed and decided by the Deputy Superintendent for Centralized Services at Plaintiff's place of confinement, Charles Hensley (hereinafter "Hensley"), in which Orlando and Hensley denied Plaintiff's grievance and justified their denial of his grievance by asserting that, because Plaintiff is being provided medical care in a correctional setting, metal and hard plastic concealed in a medical device is not permissible, the wrist splints provided to Plaintiff are still able to provide appropriate support in conjunction with his ADA disability accommodation request, and the neck brace approved via the ADA disability accommodation process was not specific for the rigid collar described in Plaintiff's grievance. (*Id.*). However, Orlando's and Hensley's initial review response to Plaintiff's

grievance was baseless, specious, and unfair, as medical devices constructed of metal and hard plastic materials are routinely provided to inmates at Plaintiff's place of confinement, the medical devices provided to Plaintiff cannot possibly immobilize and support his neck and hands and wrists adequately, and Plaintiff specifically advised CHCA Huner and Jane Does #1 and #2, both in his typewritten disability accommodation request and at interviews during the ADA disability accommodation review process, that the neck brace and wrist splints previously prescribed to him by Dr. Sumas and necessary to relieve at least *some* of his pain and prevent his injuries and pain from worsening were *rigid* medical devices. (*Id.*).

7. On January 5, 2024, Plaintiff appealed Orlando's and Hensley's initial review response to his grievance to the Facility Manager/Superintendent at his place of confinement, Joseph Terra, on the grounds that (1) Plaintiff had specifically advised CHCA Huner and Jane Does #1 and #2, both in his typewritten disability accommodation request and verbally during the ADA disability accommodation review process, that the neck brace and wrist splints previously prescribed to him by Dr. Sumas and necessary to relieve at least *some* of his pain and prevent a worsening of his injuries and pain were constructed of rigid composite-plastic materials; (2) CHCA Huner and Jane Does #1 and #2 had obtained a copy of Plaintiff's patient treatment records from Dr. Sumas, and were therefore fully aware of the type of neck brace and wrist splints that he had been prescribed by Dr. Sumas and needed to properly treat his injuries and pain; and (3) Terra's failure to ensure that Plaintiff was provided a rigid neck brace and wrist splints would result in a worsening of the pain caused by his injuries and pain, and likely result in Plaintiff's injuries worsening to such a degree that surgery may not be able to repair them and he

could become permanently crippled. (*Id.*). Plaintiff then restated the complaints he had made in his initial grievance and the relief he had requested therein. (*Id.*). On January 24, 2024, Terra returned an appeal response to Plaintiff's grievance that was reviewed and decided by Terra himself, in which Terra denied Plaintiff's grievance appeal and approved of Orlando's and Hensley's initial review response to his grievance on the grounds that metal and hard plastic concealed in medical devices is not permissible, and the neck brace and wrist splints issued to Plaintiff are still able to provide the appropriate support for his injuries/conditions and are in conjunction with his approved ADA accommodation. (*Id.*). However, Terra's response to Plaintiff's grievance appeal was baseless, specious, and unfair, as medical devices constructed of metal and hard plastic materials are routinely provided to inmates at Plaintiff's place of confinement, the medical devices provided to Plaintiff are not the type of medical devices prescribed to him prior to his confinement by a physician who specializes in the treatment of his type of injuries and pain, and the medical devices provided to Plaintiff do not immobilize and support his neck and hands/wrists enough to relieve at least *some* of his pain and prevent his injuries and pain from worsening. (*Id.*).

8. On February 8, 2024, Plaintiff submitted a final grievance appeal of Orlando's and Hensley's initial review response and Terra's appeal response to his grievance to the DOC Secretary's Office of Inmate Grievances & Appeals (SOIGA) on the grounds that (1) the medical department routinely provides medical devices constructed of metal and hard plastic materials, such as wheelchairs, crutches, canes, leg braces, walking boots, and metal-framed eyeglasses, to inmates at Plaintiff's place of confinement, and the rigid, composite-plastic neck brace and wrist splints requested by Plaintiff represent much less

of a hypothetical safety risk than any of these devices, or even the composite-plastic televisions and footlockers sold to state prisoners by the prison commissary department; (2) CHCA Huner and the persons who responded to Plaintiff's initial grievance and grievance appeal are not trained and licensed physicians, and their assertion that the neck brace and wrist splints issued to Plaintiff provide appropriate support for his injuries is not based not on medical science, but on their own untrained lay opinions and unwillingness to provide Plaintiff adequate medical care; and (3) Plaintiff's medical treatment should not be based upon DOC officials' unwillingness to order the medical devices appropriate for his injuries or some hypothetical risk that such devices would pose a safety risk to staff or other inmates at Plaintiff's place of confinement. (*Id.*). Plaintiff also restated the complaints he had made in his initial grievance and the relief he had requested therein. (*Id.*). On March 29, 2024, SOIGA Chief Grievance Officer Dorina Varner (hereinafter "Varner"), by and through SOIGA Assistant Chief Grievance Officer Keri Moore (hereinafter "Moore"), served Plaintiff notice that SOIGA was referring Plaintiff's grievance to the DOC Bureau of Health Care Services (hereinafter "BHCS") for a review of the issues raised therein, and a final appeal decision regarding Plaintiff's grievance would be delayed until such time as the Bureau of Health Care Services completed its review of the issues complained of in his grievance. (*Id.*). On June 24, 2024, Moore and Varner returned a final appeal response to Plaintiff's grievance, in which Moore, Varner, and John or Jane Doe #3 (hereinafter "Doe #3") of the BHCS upheld Orlando's and Hensley's denial of Plaintiff's initial grievance and Terra's denial of Plaintiff's grievance appeal, on the grounds that the BHCS had determined that the medical care provided to Plaintiff at his place of confinement was reasonable and

appropriate, the BHCS's finding concurred with the initial review response to Plaintiff's initial grievance, and the BHCS found no evidence of wrongdoing by CHCA Huner and Does #2 and #3. (*Id*.). However, the final appeal response Defendants Moore, Varner, and Doe #3 provided to Plaintiff's final grievance appeal contradicted the medical care and prescribed treatment provided to Plaintiff by Dr. Sumas prior to his confinement, which had not been contraindicated by medical examinations or diagnostic tests conducted by DOC medical staff following Plaintiff's arrival into the DOC's custody, and completely ignored the fact that other prisoners at Plaintiff's place of confinement have been issued medical devices constructed of hard plastic or metal materials, including at least one metal wheelchair-bound prisoner who wears a rigid composite-plastic neck brace *identical* to the one prescribed to Plaintiff by Dr. Sumas, while Plaintiff has been denied the neck brace and wrist splints he needs because they are constructed of those same materials.

9. At no time since Plaintiff's arrival into the custody of the DOC, or during his ADA disability accommodation review process, has any health care provider employed by the DOC conducted any form of medical examination and/or diagnostic testing to determine the extent and seriousness of Plaintiff's injuries and the severity of the pain he suffers as a result thereof. Defendant Huner's, Doe #1's, Doe #2's, Orlando's, Hensley's, Terra's, Moore's, Varner's, and Doe #3's refusal to provide Plaintiff the type of neck brace and wrist splints previously prescribed to him by Dr. Sumas, and pain medication more effective than Ibuprofen and Naproxen, was therefore not based on medical science, or the professional opinion of a trained and licensed physician who conducted the medical examinations and diagnostic testing on Plaintiff necessary to contraindicate Dr. Sumas'

treatment of him, but solely on the cost and/or inconvenience of ordering these medical devices for Plaintiff and the Defendants' own personal prejudices against confined and indigent state prisoners and unwillingness to provide them medical care that is comparable in adequacy to that which they would typically receive were they not confined and able to pay for their medical care, as is evidenced by the disparity in the medical care Plaintiff received from Dr. Sumas as an unconfined parolee paying for his treatment through a private health care insurance plan versus that which Plaintiff has received to date from the Defendants to the instant cause of action as a confined, indigent, uninsured state prisoner.

**PLAINTIFF'S INJURIES**

Plaintiff alleges that, as a result of the actions or inactions of the Defendants described in the aforegoing Plaintiff's Statement of Facts section of the instant Civil Rights Complaint, Plaintiff suffered the following injuries to his person:

The Defendants refusal to provide Plaintiff adequate pain medication and the rigid neck brace and wrist splints previously prescribed to him by Dr. Sumas has caused Plaintiff to suffer an increased, debilitating level of pain in his neck, shoulders, arms, hands, fingers, and wrists for an extended period of time. The pain caused by Plaintiff's neck injury constantly prevents him from reclining comfortably in bed and sleeping restfully for more than a 2-4 hours of sleep per night, and Plaintiff awakens several times during any period of sleep that he manages to attain sobbing, moaning, or whimpering from the pain, and must either struggle to find a position in bed that alleviates the pain enough for him to fall asleep again, or get up out of bed entirely until his pain fades enough for him to return to his bed and fall asleep again. Plaintiff also now frequently experiences severe headaches that occur when Plaintiff moves his head or neck in a

particular way, which begins with a hot, fiery pain that shoots up the back and around both sides of his head to his eyes, causes Plaintiff's vision to dim to the point he feels as though he is falling into unconsciousness, as well as arm and shoulder pain that shoots a hot, fiery, pulsing pain out from his neck, across his shoulders, down his arms, through his elbows, and into his wrists. The limited range of motion and pain caused by Plaintiff's neck and hand injuries now severely impedes, and at times entirely prevents, Plaintiff from looking up or down, or to the left or right, and performing such mundane tasks or functions as handwriting and typing personal correspondence or legal documents, gripping or holding objects securely, lifting or carrying objects weighing more than 1-2 lbs., handwashing his personal clothing, opening doors, using any type of hand and power tools, cleaning himself after defecation, and enaging in any physical activity that requires the repetitive use of his hands, arms, shoulders, upper back, upper chest, neck, and head. The pain in Plaintiff's hands and fingers is now so debilitating and constant that he has to immerse his hands in hot water for 10-20 minutes every morning simply to be able to brush his teeth, button clothing, use eating utensils, or hold a drinking cup or book. Plaintiff has also detected an intermittent, but increasingly frequent, loss of feeling in both his hands and fingers and his feet and toes over the past two years. The physical pain and suffering that Plaintiff has endured, and Plaintiff's fear that the Defendants' inadequate treatment of his injuries may result in him becoming permanently crippled, have also caused Plaintiff, who the Defendants know to also be mentally disabled, to suffer significant psychological distress for an extended period of time.

## PLAINTIFF'S STATEMENT OF CLAIMS

Based on the aforegoing Plaintiff's Statement of Facts and Plaintiff's Injuries sections of the instant Civil Rights Complaint, Plaintiff alleges as follows:

***Claim I***

Defendant Huner, Doe #1, Doe #2, Orlando, Hensley, Terra, Moore, Varner, and Doe #3 discriminated against Plaintiff based on his poverty, socio-economic class, and as a disabled person, denied Plaintiff adequate medical care and a reasonable disability accommodation, and subjected Plaintiff to a cruel and unusual punishment, in violation of Title II of the Americans with Disabilities Act of 1990, codified at 42 U.S.C §§12131-12165, and the Eighth and Fourteenth Amendments to the U.S. Constitution.

***Claim II***

Defendants Orlando, Hensley, Terra, Moore, Varner, and Doe #3 denied Plaintiff access to an adequate, meaningful, and fair administrative remedy process, and failed to adequately supervise and explicitly ratified of the violation of Plaintiff's rights by Defendants Huner, Doe # 1, and Doe #2 alleged in *Claim I, supra*, in violation of the First, Eighth, and Fourteenth Amendments to the U.S. Constitution.

***Claim III***

Defendants Huner, Doe #1, and Doe #2 were professionally negligent, in violation of Pennsylvania state law, for refusing to provide Plaintiff a rigid neck brace and wrist splints similar in type and purpose to the devices prescribed to him by Dr. Sumas, and adequate medication to relieve the pain caused by Plaintiff's injuries, without conducting any medical examination or diagnostic test upon Plaintiff that contraindicated Dr. Sumas' prescribed course of treatment for Plaintiff's injuries and pain.

***Claim IV***

Defendants Orlando, Hensley, Terra, Moore, Varner, and Doe #3 were negligent in their duty of care to Plaintiff, in violation of Pennsylvania state law, for failing to ensure that Plaintiff

was provided access to adequate medical care, a reasonable disability accommodation, and an adequate, meaningful, and fair administrative remedy process at his place of confinement.

***Claim V***

Defendants Orlando, Hensley, Terra, Moore, Varner, and Doe #3 intentionally and knowingly aided and abetted the professional malpractice of Defendants Huner, Doe #1, and Doe #2 alleged in *Claim III, supra*, in violation of Pennsylvania state law.

**RELIEF REQUESTED BY PLAINTIFF**

Plaintiff requests that the District Court or a jury of his peers grant him the following relief in the instant cause of action:

***Declaratory Relief***

Plaintiff requests declaratory relief finding that (1) the Defendants to the instant cause of action violated the Constitution and laws of the United States and Pennsylvania state law as alleged in *Claims I, II, III, IV, V, supra*; (2) Defendant Huner's, Doe #1's, Doe #2's, and Doe #3's response to Plaintiff's ADA disability accommodation request was so inadequate as to be meaningless and an obvious effort by these Defendants to circumvent and evade the requirements and intent of the ADA; and (3) Defendants Orlando, Hensley, Terra, Moore, Varner, and Doe #3 intentionally and knowingly refused to provide any relief in response to Plaintiff's grievance where relief was warranted, and the administrative remedy process at Plaintiff's place of confinement was not truly available to him because, despite what DOC administrative grievance policy promises, said Defendants clearly demonstrated that they were unable or unwilling to provide any relief to the aggrieved Plaintiff.

***Injunctive Relief***

Plaintiff requests injunctive relief enjoining the Defendants to the instant cause of action

to (1) provide Plaintiff a rigid, composite-plastic neck brace and wrist splints similar in kind to the rigid, composite-plastic neck brace and wrist splints prescribed to him by Dr. Sumas; (2) provide Plaintiff pain medication for his injuries that is as effective for relieving the pain caused by Plaintiff's injuries as the Vicodin prescribed to him by Dr. Sumas; and (3) place Plaintiff under the medical care of a physician who specializes in the treatment of Plaintiff's type of injuries and pain and is not directly or indirectly employed by the DOC, and follow the course of treatment prescribed or recommended by this particular physician to the letter.

***Compensatory Damages***

Plaintiff requests compensatory damages from (1) all Defendants to the instant cause of action in the amount of $500.00 per day to compensate Plaintiff for the pain and suffering he has endured as a result of the Defendants refusal to provide Plaintiff with a rigid, composite plastic neck brace and wrist splints similar in type and purpose to the devices prescribed to him by Dr. Sumas; (2) Defendants Orlando, Hensley, Terra, Moore, Varner, and Doe #3 in the amount of a lump sum of $100,000.00 to compensate Plaintiff for these Defendants' refusal to provide him access to an adequate, meaningful, and fair administrative remedy process, and concomitant failure to adequately supervise and explicit ratification of the violation of Plaintiff's rights by Defendants Huner, Doe #1, and Doe #3; and (3) all Defendants in an amount sufficient to reimburse him for all fees and costs related to the initiation and litigation of the instant cause of action.

***Punitive Damages***

Plaintiff requests punitive damages from each of the Defendants to the instant cause of action in an amount to be determined by either a judge or jury.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>Plaintiff<br><br>v.<br><br>BRITTANY HUNER, *et al.*,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION No.<br>__________________ |

**CERTIFICATE OF MERIT AS TO BRITTANY HUNER**

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of professional negligence against this defendant.

Dated: February 20, 2025

John Williams
Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>Plaintiff<br><br>v.<br><br>BRITTANY HUNER, *et al*.,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION No.<br>_______________ |

**CERTIFICATE OF MERIT AS TO JANE DOE #1**

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of professional negligence against this defendant.

Dated: February 20, 2025

John Williams
Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>Plaintiff<br><br>v.<br><br>BRITTANY HUNER, *et al.*,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION No.<br>________________ |

**CERTIFICATE OF MERIT AS TO JANE DOE #2**

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of professional negligence against this defendant.

Dated: February 20, 2025

John Williams
Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>Plaintiff | ) | CIVIL ACTION No. |
| | ) | ________________ |
| v. | ) | |
| | ) | |
| BRITTANY HUNER, *et al*.,<br>Defendants | ) | |

## CERTIFICATE OF MERIT AS TO GINA ORLANDO

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of negligence and aiding and abetting professional negligence against this defendant.

Dated: February 20, 2025

John Williams
Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>Plaintiff<br><br>v.<br><br>BRITTANY HUNER, *et al.*,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION No.<br>_______________ |

**CERTIFICATE OF MERIT AS TO CHARLES HENLEY**

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of negligence and aiding and abetting professional negligence against this defendant.

Dated: February 20, 2025

John Williams
Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>Plaintiff<br><br>v.<br><br>BRITTANY HUNER, *et al.*,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION No.<br>________________ |

**CERTIFICATE OF MERIT AS TO JOSEPH TERRA**

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of negligence and aiding and abetting professional negligence against this defendant.

Dated: February 20, 2025

John Williams
Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>Plaintiff | ) | CIVIL ACTION No. |
| | ) | ________________ |
| | ) | |
| v. | ) | |
| | ) | |
| BRITTANY HUNER, *et al.*,<br>Defendants | ) | |
| | ) | |

**<u>CERTIFICATE OF MERIT AS TO KERI MOORE</u>**

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of negligence and aiding and abetting professional negligence against this defendant.

Dated: February 20, 2025

John Williams
Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>Plaintiff | ) | CIVIL ACTION No. |
| | ) | ________________ |
| | ) | |
| v. | ) | |
| | ) | |
| BRITTANY HUNER, *et al*.,<br>Defendants | ) | |
| | ) | |

**CERTIFICATE OF MERIT AS TO DORINA VARNER**

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of negligence and aiding and abetting professional negligence against this defendant.

Dated: February 20, 2025

John Williams
Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WILLIAMS,<br>Plaintiff | ) | CIVIL ACTION No. |
| | ) | ________________ |
| v. | ) | |
| | ) | |
| BRITTANY HUNER, *et al.*,<br>Defendants | ) | |

**CERTIFICATE OF MERIT AS TO JANE DOE #3**

I, John Williams, Plaintiff in the above-captioned civil action, certify that expert testimony of an appropriate licensed professional is unnecessary for prosecution of my claim of professional negligence, negligence, and aiding and abetting professional negligence against this defendant.

Dated: February 20, 2025

John Williams
Plaintiff

## IX. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: February 20, 2025

Signature of Plaintiff [signature]

Printed Name of Plaintiff John Williams

Prison Identification # DOC #NW7468

Prison Address Pennsylvania Dept. of Corrections
SCI Phoenix
1200 Mokychic Drive
Collegeville, PA 19426

### B. For Attorneys

Date of signing: ______________

Signature of Attorney ______________

Printed Name of Attorney ______________

Bar Number ______________

Name of Law Firm ______________

Address ______________

______________ *City* ______ *State* ______ *Zip Code*

Telephone Number ______________

E-mail Address ______________

# EXHIBIT A

***Grievance Documentation***

due 12/21/23 Deputy Hensley ada

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

FOR OFFICIAL USE
1063457
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: SCI Phoenix | DATE: 11/25/2023 |
|---|---|---|
| FROM: (INMATE NAME & NUMBER) John Williams, NW7468 | SIGNATURE OF INMATE: [signature] | |
| WORK ASSIGNMENT: Kitchen 1st Shift | HOUSING ASSIGNMENT: EA-2009 | |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

On 11/20/2023, the Correctional Health Care Administrator, Ms. Huner, issued me two wrist splints and a cervical neck collar as a means of complying with my previous disability accommodation request. However, the rigid support inserts in the wrist splints had been removed for "security reasons", and the cervical neck collar is a soft, non-rigid collar. Neither of these medical devices provide any therapeutic value for the particular medical conditions and disabilities that I suffer from. The wrist splints and neck brace previously prescribed to me by my attending physician and necessary to both alleviate the debilitating pain I suffer and prevent further injury to these areas of my body must be rigid devices. Anything less is merely an effort by Ms. Huner and the medical department to circumvent the

B. List actions taken and staff you have contacted, before submitting this grievance.

I spoke to Ms. Huner and my original disability accommodation request clearly stated what type of medical devices I needed for my disabilities.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Facility Grievance Coordinator      Date

WHITE Facility Grievance Coordinator Copy   CANARY File Copy   PINK Action Return Copy
GOLDEN ROD Inmate Copy

Page 1 of 2

objectives and requirements of the ADA, and blatant indifference on the part of these DOC staff to the pain and additional injury that I will inevitably suffer as a result of these inadequate medical devices. I have personally witnessed the medical department issue other inmates medical devices constructed of rigid materials, such as metal crutches and canes, leg braces with rigid support inserts, wheelchairs, metal-framed eyeglasses, etc. Why am I any different? Ms. Huner, the medical department, and the DOC are discriminating against me as a disabled person ~~by refusing~~ by refusing to provide me with the adequate medical devices that I need for my disabilities, and deliberately subjecting to the cruel and unusual punishment of the delibitating pain and further bodily injury that the lack of adequate medical devices will cause me to suffer, which violates my rights under the ADA and the First, Fourth, Eighth, and Fourteenth Amendments to the Federal Constitution.

I request that I be provided with the rigid medical devices necessary for my disabilities ~~or, in the alternative~~, and awarded compensatory damages in the amount of $500.00 for every day that I am denied these medical devices and experience debilitating pain and suffering, as well as punitive damages in an amount commensurate with the deliberate indifference of Ms. Huner, the medical department, and the DOC to my medical needs and pain and suffering.

Page 2 of 2

# Initial Review Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

12/22/2023 11:17

| | | | |
|---|---|---|---|
| **Inmate Name:** | WILLIAMS, JOHN WILLIAM | **DOC #:** | NW7468 |
| **Facility:** | Phoenix | **Unit Location:** | E / A 2009 |
| **Grievance #:** | 1063477 | | |

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows:

**Decision:Grievance Denied**

It is the decision of this Grievance Officer to uphold, deny, or uphold in part/deny in part the inmate's initial grievance. This response will include a brief rationale, a summary of the conclusion, any action taken to resolve the issue(s) raised in the grievance, and the relief sought.

**Response:**

This is in response to your grievance where you indicate displeasure with the medical equipment that has been issued to you. Specifically, you state that the wrist splints are not appropriate as the metal supports have been removed and the neck brace is not appropriate. You believe these devices are "blatant indifference" and demonstrate a disregard to ADA. You also state that you have witnessed other inmates receive metal items and question if you are different. As relief, you request to be provided with rigid medical devices necessary for your disabilities and awarded compensatory damages in the amount of $500.00 for everyday you are denied these devices. as well as punitive damages.

I have investigated your grievance. You were issued wrist splints and a neck brace. As we are providing care in a correctional facility/setting, metal and hard plastic concealed in a medical device is not permissible. However, the wrist splints are still able to provide appropriate support in conjunction with your ADA accommodation. Your neck brace approved via the ADA process was not specific for a "rigid collar" requested in this grievance.

You should seek sick call services for continued pain.

Your grievance and requested relief are denied.

| | |
|---|---|
| **Signature:** | |
| **Name:** | C. Hensley |
| **Title:** | |
| **Approver:** | G. Orlando GO |
| **Date:** | 12/22/2023 |

CC: Facility Grievance Coordinator
DC-15

# SCI
# INMATE APPEAL TO FACILITY MANAGER
# GRIEVANCE

| Inmate Number | NAME | HOUSING UNIT | DATE | GRIEVANCE# |
|---|---|---|---|---|
| NW7468 | John Williams | EA-2009 | 1/5/2024 | 1063477 |

I received my initial response from the Grievance Office/Coordinator on 12/26/2023 and have the following appeal issues.

Refer to DC-ADM 804, Grievance Appeal Procedures, for complete instructions.

Please provide a BRIEF (no longer than two pages) appeal statement.

Since my arrival into the custody of the DOC on July 22, 2019, I have continuously advised DOC medical staff that the wrist splints and neck brace prescribed by my attending physician, Dr. Maria Elena Sumas of Carlisle, Pennsylvania, to treat my Carpal Tunnel Syndrome and neck injuries were rigid black Kevlar wrist splints and a rigid white plastic adjustable neck brace. During the ADA disability accommodation approval process that I recently underwent here at SCI Phoenix, I described these medical devices in great detail to both the health care provider and CHCA Huner, and the medical department obtained my health care records from Dr. Sumas. So, SCI Phoenix medical staff are well aware of the type of wrist splints and neck brace I need to properly treat my conditions. If my wrist splints and neck brace are not rigid, then my hands, wrists, and neck will not be immobilized and my conditions and the pain these conditions cause me will only continue to worsen. It is even likely that my conditions will become so severe that surgery will not be able to correct them and I will be permanently crippled.

I restate my grievance complaint and the relief I have requested.

INMATE SIGNATURE: [signature]

DC-ADM 804, Inmate Grievance System Procedures Manual
Section 2 – Appeals
Issued: 4/27/2015
Effective: 5/1/2015

Attachment 2-A

PA

# Facility Manager's Appeal Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

01/24/2024 12:48

| | | | |
|---|---|---|---|
| **Inmate Name:** | WILLIAMS, JOHN WILLIAM | **DOC #:** | NW7468 |
| **Facility:** | Phoenix | **Unit Location:** | E / A 2009 |
| **Grievance #:** | 1063477 | | |

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted above. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

**Decision:Uphold Response**

It is the decision of this Facility Manager to uphold the initial response, uphold the inmate, dismiss, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

**Response:**

I am in receipt of your grievance appeal in which you claim on 11/20/2023, the CHCA Huner issued you two wrist splints and a cervical neck collar as a means of complying with your previous disability accommodation request. However, the rigid support inserts in the wrist splints have been removed for security reasons and the cervical collar is a soft, non-rigid collar. Neither of these devices provide any therapeutic value. Requested relief: that you be provided with rigid medical devices necessary for your disabilities, awarded $500.00 for compensatory damages for every day that you are denied these medical devices, punitive damages in an amount commensurate with the deliberate indifference of CHCA Huner, the DOC to your medical needs, and pain and suffering.

In my investigation, I find that the response by Deputy Hensley is appropriate as metal and hard plastic concealed in medical devices are not permissible. However, the devices you have been issued as per your ADA accommodation are still able to provide appropriate support and are in conjunction with your approved ADA accommodation.

Additional information will not be addressed as it was not in the initial grievance.

I will uphold the decision of the grievance officer and deny your appeal and requested relief.

| | |
|---|---|
| **Signature:** | [signature] |
| **Name** | J. Terra |
| **Title:** | Facility Manager |
| **Date:** | 1-24-24 |

CC: DC-15
File

# INMATE APPEAL TO FINAL REVIEW GRIEVANCE

| INMATE NUMBER | NAME | FACILITY | DATE | GRIEVANCE# |
|---|---|---|---|---|
| NW7468 | John Williams | SCI Phoenix | 2/8/2024 | 1063477 |

I received my appeal from the Superintendent on 2/1/2024 and have the following appeal issues:

Refer to DC-ADM 804, Grievance Appeal Procedures, for complete instructions. Appeals must relate to the issue presented in the initial grievance and 1st level appeal.

Please provide a BRIEF (no longer than two pages) appeal statement.

The premise of the Initial Review Response and Facility Manager's Appeal Response in the above-referenced grievance matter is faulty for the following reasons:

*First*, I have personally witnessed other inmates at SCI Phoenix using or wearing medical devices issued by the Medical Department that have metal and/or hard plastic supports or parts, such as: wheelchairs, crutches, canes, leg braces, walking boots, and metal-framed eyeglasses. The medical devices that I have requested for my own conditions represent much less of a hypothetical safety risk than these types of medical devices, or, for that matter, the televisions and footlockers that the DOC sells on the prison commissary.

*Second*, the individual who ordered the medical devices that I am complaining about, CHCA Huner, and the individuals who responded to my initial grievance and grievance appeal, Deputy Superintendent C. Hensley and Superintendent J. Terra, are *not* trained and licensed physicians, so their conclusions that the medical devices issued to me "provide appropriate support" for my conditions are not based on medical science, but on their own *untrained* lay opinions and their unwillingness to provide me adequate medical care. The neurosurgeon who prescribed me the medical devices that I am requesting from the DOC will certainly provide a contrary *expert* opinion.

My medical treatment should *not* be based upon DOC officials unwillingness to order the appropriate medical devices for my conditions, or some hypothetical risk that my devices would pose a safety risk within the institution.

I restate the issues complained of and the relief requested in my grievance.

INMATE SIGNATURE: [signature]

# Grievance Referral
# (Notice to Inmate)

Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

03/29/2024 03:24

| | | | |
|---|---|---|---|
| **Inmate Name:** | WILLIAMS, JOHN WILLIAM | **DOC #:** | NW7468 |
| **SCI Filed:** | Phoenix | **Current SCI:** | Phoenix |
| **Grievance #:** | 1063477 | | |

This serves to acknowledge receipt of your appeal to final review for the grievance noted above. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", this Office has reviewed the documents submitted; including your initial grievance, the grievance officer's response, your appeal to the facility manager, the facility manager's response, and the issues you raised to final review. Upon completion of this review, it is the determination of this Office to solicit input from an appropriate Central Office Bureau relative to the issue(s) raised in your grievance. Therefore, please be advised that the final review decision will be delayed pending review by the office to which it has been referred. Upon completion of this review, however, a determination will be made and you will be provided with a final appeal decision in writing.

**Action: Referral**

**Bureau/Office:**

- Health Care - Referral Date : 03/29/2024

| | |
|---|---|
| **Signature:** | Keri Moore for |
| **Name:** | D. Varner |
| **Title:** | Chief Grievance Officer |
| **Date:** | 03/29/24 |

cc: DC-15/Superintendent - Phoenix
Grievance Office

PA

06/24/2024 09:04

## Final Appeal Decision

Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

| | | | |
|---|---|---|---|
| **Inmate Name:** | WILLIAMS, JOHN WILLIAM | **DOC #:** | NW7468 |
| **SCI Filed:** | Phoenix | **Current SCI:** | Phoenix |
| **Grievance #:** | 1063477 | | |

This serves to acknowledge receipt of your appeal to the Secretary's Office of Inmate Grievances and Appeals for the grievance noted above. In accordance with the provisions of DC-ADM 804, Inmate Grievance System Policy, the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to the Facility Manager, the Facility Manager's response, the issues you raised to final review, and (when applicable) any revised institutional responses required as a result of a subsequent remand action by this office. As necessary, input from appropriate Central Office Bureaus (e.g., Health Care Services, Chief Counsel, Office of Special Investigations and Intelligence, etc) may have been solicited in making a determination in response to your issue as well.

**Decision:Uphold Response**

It is the decision of the Secretary's Office of Inmate Grievances and Appeals to uphold the initial response, uphold the inmate, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

**Response:**

The staff at the Bureau of Health Care Services reviewed your concern of not being provided proper medical care. They have thoroughly reviewed your medical record and has determined that the medical care provided was reasonable and appropriate. Their findings concur with the initial review response.

Your attending practitioner makes these clinical decisions. You are encouraged to participate in your treatment plan and to discuss your concerns or changes of condition with a practitioner. They found no evidence of wrongdoing. Therefore, this office upholds the responses provided to you and your requested relief is denied.

| | |
|---|---|
| **Signature:** | Keri Moore for |
| **Name:** | D. Varner |
| **Title:** | Chief Grievance Officer |
| **Date:** | 06/24/24 |

CC: DC-15/Superintendent - Phoenix
Grievance Office

John Williams
DOC #NW7468
SCI Phoenix
Pennsylvania Dept. of Corrections
1200 Mokychic Drive
Collegeville, PA 19426

quadient
FIRST-CLASS MAIL
IMI
$003.15
02/18/2025 ZIP 19426
043M31248366
US POSTAGE

United States District Court
Eastern District of Pennsylvania
Office of the Clerk
United States Courthouse
Independence Mall West
601 Market Street
Philadelphia, PA 19106

RECEIVED
FEB 20 2025

## CERTIFICATE OF SERVICE

I certify that on September 30, 2026, I electronically transmitted the foregoing appendix to the Clerk of the Court using the appellate CM/ECF System, causing it to be served on counsel of record, who are all registered CM/ECF users.

/s/ *Samuel Weiss*
Samuel Weiss